Alik Segal (SBN 175159)
Law Offices of Alik Segal
433 N. Camden Dr. #400
Beverly Hills, CA 90210
Telephone: (310) 362-6157
Facsimile: (310) 382-2551
E-mail: Alik.Segal@BkFort.com
*Attorney for Debtor and
Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SAN FERNANDO DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No.: 1-12-bk-20158-AA |
| JOSEPH WILLIAMS, | **Revised Plan Addendum; Declaration of Stella Berestetsky** |
| | Disclosure Statement Hearing: |
| | Date:    November 5, 2014 |
| | Time:   10:00 am |
| | Ctrm:   303 |
| | Place:  21041 Burbank Boulevard |
| | Woodland Hills, CA 91367 |
| Debtor and | |
| Debtor-In-Possession | Plan Confirmation Hearing: |
| | Date:    [To be set by the Court] |
| | Time:   [To be set by the Court] |
| | Ctrm:   303 |
| | Place:  21041 Burbank Boulevard |
| | Woodland Hills, CA 91367 |

**TO THE HONORABLE ALAN M. AHART, UNITED STATE BANKRUPTCY JUDGE,**

**UNITED STATES TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

**REVISED PLAN ADDENDUM**

## Table of Contents

II.    PREFACE ................................................................................................ 3

III.    PLAN SUMMARY ................................................................................. 3

IV.    EXPLANATION OF THREE ALTERNATIVE PLANS FOR FOUR, FIVE, AND SIX PROPERTIES ........ 9

V.    INVESTOR ENGAGEMENT ................................................................. 10

VI.    INVESTOR COMPENSATION ............................................................. 11

VII.    INVESTOR OBLIGATION ................................................................... 12

VIII.    INVESTOR PROTECTION ................................................................... 13

IX.    CLARIFICATION OF EXHIBIT 14 – MS ............................................. 16

X.    RESOLVING MANAGEMENT TITLE OBSTACLES TO PROPERTY SALES ................ 18

XI.    GENERAL TERMS ............................................................................... 20

XII.    EXISTING STIPULATIONS .................................................................. 21

**REVISED PLAN ADDENDUM**

## REVISED PLAN ADDENDUM

**I.    PREFACE**

1. This revised plan addendum is reorganized primarily to improve readability and assure that all key facts mentioned in the First Amended Plan and Disclosure Statement (Doc 188) filed September 12, 2014 ("FAPDS") are organized into a single internally consistent and complete document.

2. With regard to creditor treatment, feasibility, or any other plan attribute, the Revised Plan Addendum contains no new terms, facts or financial figures.  It only highlights, explains or reorganizes facts and figures that had been included in the original Addendum or provides background information.

3. The revised plan addendum adds an alternative scenario.  The arrangement described in the original Addendum is herein known as the Attorney Control scenario.  The revised addendum contains the Attorney Control scenario and also adds another scenario—Split Control scenario.  Both of these are described below. Provisions related to Split Control scenario are *italicized*.

**II.    PLAN SUMMARY**

4. The Debtor Joseph Williams ("Debtor") fought valiantly to preserve and improve his chapter 11 bankruptcy estate, consisting of six properties—five single family residences and one duplex.  He overcame obstacles from which most ordinary business people would shrink.  Four of the six properties were vacant and severely distressed.  Debtor

**REVISED PLAN ADDENDUM**

managed to accomplish his goals of rehabilitating these properties on a limited budget, while securing cooperation from a co-owner, the relationship with whom had been difficult.

5. The six properties are

- 13755 Driftwood Dr., Victorville, CA 92392 ("Driftwood")

- 1675 West Blvd, Los Angeles, CA 90019-5809 ("West Blvd.")

- 5356 8th Ave, Los Angeles, CA 90043-4856 ("8th Ave.")

- 3629 S Genesee Ave, Los Angeles, CA 90016-5009 ("Genesee Ave.")

- 5271 Angeles Vista Blvd., Los Angeles, CA 90043 ("5271 AV")

- 5303 Angeles Vista Blvd., Los Angeles, CA 90043 ("5303 AV")

6. Properties Driftwood, West Blvd., and 8th Ave. may be referred to collectively as "DW8".

7. Properties Genesee Ave., 5271 AV, and 5303 AV may be referred to collectively as "GAV".

8. Properties 5271 AV, and 5303 AV may be referred to collectively as "AV".

9. Now Debtor proposes a feasible plan, in which liquidity is assured by a well-heeled investor Ms. Stella Berestetsky ("Investor"). Investor, who is an experienced real estate investor, agrees to disburse up to $60,000 until plan goals are accomplished. These goals include paying off unsecured plan obligations, returning Investor's capital with modest profit, and paying off chapter 11 attorney's fees, in that order. To fund this plan, Debtor proposes to sell some properties, particularly those that present management challenges.

**REVISED PLAN ADDENDUM**

10. The plan proposes to pay the unsecured obligations and administrative overhead until one or more properties are sold to pay off the unsecured plan obligations in full.  Any remainder from the first sale and, if necessary, proceeds from subsequent sales will be used to pay down or pay off the Investor's disbursements.  Investor's funds will not be used to pay the fees of Debtor's attorney Alik Segal ("Attorney").  Attorney will be paid only after both the unsecured creditors and the Investor have been paid in full.

11. Marketing of three of the six properties involves certain title difficulties.  Two properties, which are located on Angeles Vista Boulevard in Los Angeles, California ("AV properties"), are co-owned with Mr. Maurice Stephenson ("Co-owner").  Co-owner holds title to fifty percent (50%) of AV properties.  Ms. Esther Escalante ("Gratuitous Transferee") did not pay any consideration for her share and holds title to five percent (5%) of three of these properties—AV properties and the property located on Eighth Avenue in Los Angeles, California ("8th Ave. property").  Debtor holds title to forty five percent (45%) of each AV property and ninety-five percent of 8th Ave. property.  See Figure 1 immediately below.

**REVISED PLAN ADDENDUM**

## FIGURE 1

| | A | B | C | D | E |
|---|---|---|---|---|---|
| | Co-owner 50% | | Co-owner 50% | | Debtor 95% |
| | Debtor 45% | | Debtor 45% | | |
| | 5% Gratuitous Transferee | | 5% Gratuitous Transferee | | 5% Gratuitous Transferee |
| | **5271 Angeles Vista** | | **5303 Angeles Vista** | | **5356 8th Ave** |
| | **Los Angeles, CA 90043** | | **Los Angeles, CA 90043** | | **Los Angeles, CA 90043** |

12. Because Gratuitous Transferee paid no value for the transfer, her interest is vulnerable to an action for quiet title. <u>Muktarian v. Barmby</u>, 63 Cal.2d 558 (1965). Once the title of Gratuitous Transferee is cleared, the properties can be marketed. AV properties will be marketed either with Co-owner's consent or pursuant to a partition action. Although cooperation had been difficult to achieve in the past, Debtor hopes that a sale of AV properties will be achieved cooperatively. Otherwise a partition action will be necessary.

13. General Unsecured Creditors ("GUC") and other unsecured obligation (collectively "Plan Unsecured Claimants" or "PUC") will receive regular monthly payments according to the plan. Debtor will have the right to pay off the PUC early.

14. At any time after confirmation during the plan period, upon completion of payments to all unsecured creditors and professional claimants, Debtor may apply to the Court and obtain discharge and the final decree closing the case. Investor may ask the court to

**REVISED PLAN ADDENDUM**

close the case and enter the final decree before her investment plus profit are paid in

full.  Attorney may ask the court to close the case and enter the final decree before his

fees are paid in full.

15. This plan contemplates that the title and ownership of some or all properties will be

transferred to and respective mortgages assumed.  The transferee and the party

assuming will be either Attorney or a special purpose entity ("SPE") (a business entity or

a trust) that will be owned or otherwise controlled by Attorney.  The plan contemplates

two scenarios:

   a.  In first scenario, known as Attorney Control scenario, all six properties are treated

       similarly.  Transferee will receive from Debtor title to all six properties and will

       assume each relevant plan mortgage.  See Investor Protection section below

       concerning transfer and assumption.

   b.  In the second scenario, known as Split Control scenario, transferee will receive

       title to and will assume plan mortgages encumbering three properties--Genesee,

       5271 Angeles Vista, and 5303 Angeles Vista (collectively "GAV").  No other

       transfers of title and assumption of mortgages will take place.  Title to three

       other properties--Driftwood, West, and 8th Avenue (collectively "DW8")--remains

       with the debtor.  Debtor also remains the sole party liable on the DW8 plan

       mortgages.

   c.  Under either scenario, after the transfer and assumption the contractual rate of

       ten percent (10%) will be reduced to five percent (5%).

**REVISED PLAN ADDENDUM**

16. Exhibit 12 – TS (Treatment Summary) provides the big picture of the treatment of various allowed claims.  Treatment Summary format has been cosmetically revised to improve readability.

   a. Column "Dividend Amount ($) after family contribution" was duplicative and has been removed.

   b. Rows "Eunice Walker" and "Family and Friends" were empty and were also removed.

   c. Some blank lines have been removed.

   d. Some headings have been reduced from three lines to two lines.

   e. Column and row headings have been added for easy reference.

   f. Revised Treatment Summary is attached hereto as Exhibit 12A – TS.

17. Exhibit 14 – MS (Management Standards), added to the filed Plan pursuant to Investor's request, contains good business practices that Debtor is expected to uphold.  If Debtor fails to uphold specified practices or specified plan obligation, property management responsibilities will be transferred to a professional manager.  See Exhibit 14 for specifics.

   a. It should be clarified that the allotment of liquid funds that Debtor will maintain for day-to-day expenses of $1,800 is for six properties and is equivalent to $300 per property.  When a property is sold the total allotment will be reduced by $300.

   b. *Exhibit 14-MS (Management Standards) was drafted for the Attorney Control scenario.  Under the Split Control scenario, management standards will apply*

**REVISED PLAN ADDENDUM**

*differently depending on whether they relate to the entire case or one or more*

*properties.*

    i. *Management standards that apply to the entire case continue in full force*

       *under Split Control scenario.*

    ii. *Management standards that apply to particular properties continue in full*

       *force only with regard to properties under Debtor control.*

18. Exhibit 15 – AFC (Attorney Financial Condition) shows Attorney's FICO score of 753.

Since this plan gives some management responsibilities and some discretion to

Attorney, his FICO score is offered to demonstrate that Attorney is responsible in

management of his own financial affairs and may be trusted with plan management

responsibilities and management discretion.

### III.    EXPLANATION OF THREE ALTERNATIVE PLANS FOR FOUR, FIVE, AND SIX PROPERTIES

19. Debtor has six income properties. Debtor's real estate income and opportunity to

benefit from property appreciation depend on which of the three scenarios is included

in the confirmed plan.  Alternative proposals include:

    a.  keeping all six properties,

    b.  keeping five properties and abandoning one of two properties located at Angeles

       Vista Blvd. (collectively "AV Properties"), and

    c.  keeping four properties and abandoning both AV Properties.

20. The rationale for treating AV properties differently is as follows.

    a.  These properties are running a small deficit.

**REVISED PLAN ADDENDUM**

   b.   These properties are co-owned with Mr. Stephenson.  The relationship with the

       co-owner has been difficult, and this creates a management problem.

21. Assuming that the properties are included in the postconfirmation estate, the

    management problem will be addressed postconfirmation via a consensual sale or a

    partition.

**IV.    INVESTOR ENGAGEMENT**

22. Investor is a successful real estate investor with substantial liquid assets and disposable

    income.  She promises to advance up to $60,000 to insure plan success.  These funds

    will not be used to pay the plan fees of Attorney Alik Segal ("Attorney").

23. Exhibit 7 – SD contains two declarations by Investor.  The first declaration concerns

    Investor's financial condition and appears on pages 33-36 of FAPDS.  The second

    declaration deals with the terms of her engagement and appears on pages 37-39 of

    FAPDS.

24. The financial condition declaration gives certain figures of net worth and disposable

    income.  In order to protect Investor's privacy Exhibit A does not show Investor's full net

    worth, liquid assets, and disposable income.  Instead it shows that the net worth

    exceeds $400,000, liquid assets exceed $100,000, and disposable income after financial

    assistance to other persons exceeds $6,000 per month.  The actual net worth, liquid

    assets, and disposable income after financial assistance to other persons are each

    greater.  Exhibit B to the financial condition declaration is a certificate of deposit with

**REVISED PLAN ADDENDUM**

the face value of $96, 146.  Sixty thousand dollars from this certificate of deposit

account will be available to invest in this case.

25. The goal of investor's engagement is to provide liquidity until, first and foremost,

unsecured plan obligations have been paid off.  For this reason, she is not interested in

the risky (but potentially profitable) strategy of generating a large balance and deriving

from that balance substantial amounts of profit.  Her goal is to see unsecured

obligations paid in full from the first sale (if possible), and then to reduce her balance by

getting paid as quickly as possible after the unsecured obligations are paid.  After

Investor's balance is reduced or entirely eliminated, her obligation to disburse up to the

maximum of $60,000 continues.

26. For example, it is a foreseeable scenario that the investor disburses $30,000.  The

proceeds of the first sale pay the unsecured plan obligations in full and pay $20,000 to

the Investor.  Investor's balance is reduced to $10,000.  Thereafter she has the

obligation to disburse additional $50,000.  Her goal, after her balance is reduced, is to

continue to provide liquidity until she and the Attorney can be paid in full.


V.    **INVESTOR COMPENSATION**


27. Investor will receive compensation for being available to provide funds, for providing

funds, and for consulting concerning real estate investment and property management.

28. For being available to provide funds and for consulting concerning real estate

investment and property management, Investor will receive ten percent (10%) of

attorney's fees ultimately collected.

**REVISED PLAN ADDENDUM**

29. For actually providing funds and consulting concerning real estate investment and

property management, upon case termination, Investor will receive her funds with 10%

interest.  Some important exceptions apply and are discussed in the <u>Investor Protection</u>

section.

## VI.    INVESTOR OBLIGATION

30. Investor obligation is limited in the following ways.

31. Investor will have no obligation to pay Attorney's fees awarded in this case.  These fees

will be paid from sale proceeds after the investment is repaid with profit.

32. Investor obligation to disburse funds will be enforceable only by Attorney and will not

extend to his assigns, successors, heirs, legatees, personal representatives or any other

third parties.  Attorney, of course, has a keen interest in seeing that the Plan Unsecured

Claimants ("PUC") are paid because he is paid only after the PUC and the Investor.

33. Investor obligation will be limited under force majeure and frustration of purpose

doctrines.  For example, Investor will have no obligation to continue investing in case of

events such as war, riots, environmental disaster affecting the property, eminent

domain, etc.  However, Investor will still have the right to collect on her investment

pursuant to plan mechanisms to the extent possible.

34. Investor obligation ends when the Plan Unsecured Creditors are paid in full, Investor

receives back her investment with profit, and Attorney receives his awarded attorney's

fees.

**REVISED PLAN ADDENDUM**

**VII.    INVESTOR PROTECTION**

35. Since Debtor has not been able to find an investor, Attorney's long-term friend Stella
Berestetsky ("Investor") has agreed to step in and help Debtor. She is only willing to do
this as a personal favor to Attorney. Investor is very busy dealing with her own affairs.
She would not take time from her work and family or put money at risk if this was only
about money.  As any other experienced investor who is coming to save a very
precarious and risky situation, she wants to have her investment protected to the
greatest extent possible. She is entering this case completely blind without having met
Debtor, without knowing anyone on Debtor's team and without having current
appraisals.  She is going into this case and into this investment based solely on
Attorney's word.

36. *Accordingly, Investor is willing to help Debtor only if Attorney will be fully in charge,
under the Court's review and supervision, over some or all properties.  In the Attorney
Control scenario, Attorney will have full control over all six properties.  In the Split
Control scenario, Attorney will have full control over three properties (GAV), and Debtor
will have full control over three other properties (DW8).*

37. Upon case termination, Investor will generally receive her funds with 10% interest.
There are two limited circumstances where Investor will receive her investment back
with 100% profit.

   a.   The goal of this first situation where 100% annual profit will apply is to motivate
Debtor to provide his entire disposable income of $1,326/month.  If Debtor fails

**REVISED PLAN ADDENDUM**

to provide entire $1,326 and Investor needs to replace any shortfall, she will earn 100% annual profit on that shortfall.  To cut off the profit, Debtor will be free to replace the shortfall within days, weeks, months, or as quickly as possible through assistance from friends and family.  Debtor must bring into the estate a steady stream of $1,326/mo.  It is not sufficient for Debtor to bring in nothing in one month and bring in $2,652 in the subsequent month.

b. The goal of this first situation where 100% annual profit will apply is to encourage Debtor to produce quality financial reports cost-effectively.  Exhibit 14 – MS (Management Standards), added pursuant to Investor's request, contains good business practices that Debtor is expected to uphold. Preconfirmation Debtor has spent substantial financial resources to prepare quality reports.  Preconfirmation, this money came mostly from Debtor's friend—from outside the estate.  This condition continues the status quo.  The Investor is not responsible to resolve the difficulty Debtor encountered in creating quality reports.  It is the responsibility of Debtor and his team to solve this problem.  If Debtor cannot solve the problem of preparing cost-effective quality reports postconfirmation, and Investor has to advance funds for this purpose, then Investor should receive annual profit until Debtor is able to replace these funds.

38. *Investor requests as a condition of her participation that after confirmation, title and ownership of some or all properties be transferred to and respective mortgages assumed by either Attorney or a special purpose entity ("SPE") (a business entity or a trust) that*

*will be owned or otherwise controlled by Attorney. Under the Attorney Control scenario,*

*all six properties will be transferred. Under the Split Control scenario, three properties—*

*GAV—will be transferred, while three properties—DW8—will remain with the Debtor.*

39. One of the goals of this SPE is to prevent the properties to be subject of additional

bankruptcy proceedings, and the SPE will be designed specifically for this purpose.

Upon payment of debt to Investor and Attorney and upon Debtor receiving discharge,

title and ownership of remaining properties will be restored to Debtor, and he will

assume respective mortgages. Debtor will also have the option to paying off plan debts

by prepaying some or all mortgages. This provision may be uncommon, but it is

necessary for the execution of this plan. As a corollary, to the extent that some

stipulations or loan documents contain clauses to the contrary, this plan, if confirmed,

will supersede these clauses.

40. Although the title to estate real property may be held in the name of Attorney or a

special purpose entity, such as a business entity or a trust, Debtor will remain liable to

the mortgagees, as he would be if he held title directly and was the mortgagor.

41. On the Effective Date, or as soon thereafter as practical, Investor will receive a secured

instrument similar to a secured line of credit, a note secured by a recorded trust deed.

Unlike ordinary lines of credit, no payment will be due on this line of credit until funds

are available to pay down or pay off the balance.

42. When the case terminates successfully or otherwise, investment plus profit will become

a balloon immediately due and payable. Unless the balloon could be settled in cash

within thirty days, the portfolio will be listed for sale under the Investor's license or by

**REVISED PLAN ADDENDUM**

another licensee designated by Investor.  If equity is available, properties will be sold until investment plus profit are paid off.  If equity is exhausted by the Investor's investment plus profit, Attorney may receive no distribution.

43. Debtor will be primarily responsible to repay the investment plus profit.  Attorney will personally guarantee repayment of these funds to Investor.

44. Investor is entitled to ten percent of attorney's fees ultimately collected by Attorney.

45. The estate will maintain life insurance on the life of the debtor with a $400,000 benefit.  The policy will provide for ten-year level non-smoking premiums.  The first beneficiary of the policy will be the unsecured creditors of the estate.  After the unsecured creditors are paid, the remaining funds will go directly to the Investor and, thereafter, directly to the Attorney.  Debtor will designate remainder beneficiary.

## VIII.    CLARIFICATION OF EXHIBIT 14 – MS

46. *Exhibit 14-MS (Management Standards) was drafted for the Attorney Control scenario. Under the Split Control scenario, management standards will apply differently depending on whether they relate to the entire case or one or more properties.*

   a. *Management standards that apply to the entire case continue in full force under Split Control scenario.*

   b. *Management standards that apply to particular properties continue in full force only with regard to properties under Debtor control.*

47. Debtor will have full property management responsibilities from confirmation.  If Debtor fails to carry out his management or certain other plan obligations listed in Exhibit 14  -

**REVISED PLAN ADDENDUM**

MS (Management Standards), Attorney after a motion and court order may take over the management responsibilities or hire a professional property manager.  These standards are practical and common sense requirements mandated by the Investor. One the standards requires that Debtor contribute his entire disposable income to the estate from his primary occupation as a professional musician.  Paragraph 5 in Exhibit 14 – MS provides that if Debtor fails to provide his full disposable income for three months (consecutive or not) on the first of the month debtor will be freed from property management responsibilities so he can focus on his music profession.  This provision at Line 1 of Paragraph 5 requires two clarifications.

48. First, Debtor's disposable income is calculated and established in Exhibit 1 – DCPI (Declaration of Current/Postpetition Income).  The value of Debtor's disposable income calculated in Exhibit 1 is $1,436.  Exhibit 14 - MS (Management Standards) which defines Debtor's obligation to contribute entire disposable income and consequences if he fails to do so, shows a different number--$1,326 per month.  This discrepancy requires an explanation.

49. The amount $1,436 is the sum of Debtor's real estate income with six properties $110/mo and Debtor's music income $2,826/mo less Debtor's expenses of $1,500/mo. The income shown in Exhibit 14 – MS $1,326/mo is a figure that excludes real estate income.  Debtor is only responsible to keep his music income at or above $2,826/mo or to keep his expenses at or below $1,500/mo. so he can contribute from his music income (after his personal expenses) $1,326/mo.

**REVISED PLAN ADDENDUM**

50. Second, Debtor is required to contribute his entire disposable income even if it exceeds $1,326.

## IX.    RESOLVING MANAGEMENT TITLE OBSTACLES TO PROPERTY SALES

51. Debtor co-owns two properties with another individual, Maurice Stephenson ("Co-owner").  The relationship between co-owners has been difficult.  The two gentlemen have had difficulty achieving cooperation.  This difficulty is a management problem. Debtor will resolve this problem via a sale or by partition action of the two Angeles Vista Boulevard properties ("AV properties) in state court.

52. Currently, the sum of the loans encumbering each property exceeds its fair market value.  One or more parties holding the mortgages thus will need to settle with Debtor's co-owner Mr. Stephenson.  Mr. Stephenson has expressed a desire in the past to consummate a short sale and is reasonably expected to cooperate.  Without a partition, a short sale or a foreclosure may be impossible or impractical.

53. In addition to Mr. Stephenson, another co-owner Esther Escalante holds five percent of each AV property.  In other words, fifty percent is held by Mr. Stephenson, forty five percent is held by Debtor, and five percent is held by Ms. Escalante.

54. Ms. Escalante has given no consideration for her interest.  The transfer was done on advice of a rogue paralegal with the knowledge and consent of the attorney Guy Bayley, who was advising Debtor at the time.  Because Ms. Escalante paid no value for the transfer, her interest is vulnerable to an action for quiet title.  Muktarian v. Barmby, 63 Cal.2d 558 (1965).

**REVISED PLAN ADDENDUM**

55. For the partition and quiet title litigation, to the extent this work is done before the first sale, the following terms will apply.  Attorney will work with an experienced real estate attorney.  Experienced real estate attorney will need to be paid up front.  The bulk of the real estate legal work will be done by Attorney.  Attorney will be paid for this work from proceeds of the partition.  The money to pay the experienced real estate attorney will come from the estate. In practice, it will be provided by the Investor.  Most likely the partition will result in a sale of the properties to third parties.  As a corollary, if the sale of Co-owner's interest does not pay off all liens, mortgagees will have state court remedies against the Co-owner.

56. The proceeds will be divided as follows.

57. The purpose of this paragraph is to clarify that there are two types of attorney's fees for purposes of the partition statute.

    a. California Code of Civil Procedure § 874.010(a) allows for the recovery of those attorney fees incurred by a party for the common benefit.  <u>Stutz v. Davis</u>, 122 Cal. App. 3d 1, 5 (1981).  These will be called Common Benefit Attorney's Fees.

    b. On the other hand, attorney's fees that benefit attorney's client (here the estate) vis a vis other co-owners are not recoverable directly from the proceeds and are the responsibility of the client.  These will be called Client-Only Attorney's Fees.

    c. Common Benefit Attorney's Fees will be paid to the attorney directly from the proceeds, in the same way that a realtor gets paid from the sale proceeds before anyone else.  Client-Only Attorney's Fees will be paid as described below.

**REVISED PLAN ADDENDUM**

58. The 50% share of Maurice Stephenson's proceeds from each property will be paid to the holder of the first lien on the respective property.  Any remainder of the share of Mr. Stephenson will be paid to the holder of the second lien.  The 50% share of the Debtor will be used first to pay the holder of the applicable plan mortgage.  The remainder, if any, will be paid to the General Unsecured Creditors.  The remainder, if any, will be paid to reimburse the Investor for any funds already advanced.  After being reimbursed from partition proceeds, the Investor will have a continuing obligation to advance funds, up to $60,000.  Any funds remaining from partition proceeds will go to pay Attorney's real estate fees and bankruptcy fees.

59. *Some or all properties that will have equity beyond transaction costs may be sold at Attorney's discretion to pay PUC, the Investor, and the Attorney's fees in that order. Under the Attorney Control scenario, Attorney may sell any property in any order.  Under the Split Control scenario, Attorney may only sell GAV properties.  Eighth Avenue property may be sold but only after GAV properties have been sold and proceeds were not sufficient.*

60. Debtor has the option to pay off all debts including pre-petition debts, debt to Investor and the debt to Attorney by finding another investor to pay off all of these debts or by finding new financing—secured or otherwise—to pay off all of these debts.

## X.   GENERAL TERMS

61. As of the Effective Date, the obligations shall be deemed current.  All pre-petition defaults are cured by confirmation of the plan and all foreclosure actions including any

**REVISED PLAN ADDENDUM**

notice of default or sale are void.  All other terms of the existing loan documents not

inconsistent with this plan shall remain in full force and effect and apply to the secured

portion of the claim.  In the event Debtor fails to comply with these terms, secured

creditors shall have all remedies as called for in the original contract.  The allowed

unsecured portion of the claim shall be paid as part of the general unsecured claims as

described in Class 6 above.

62. The Plan provides that the Effective Date is 14 days after the confirmation order is

entered.  Page 8, Article VII, Par B.  Disclosure Statement provides that the period is 30

days.  Page 10.  The correct period is 14 days.

63. In Exhibit 2 – ISCC, page 27 of 57, the holder of the claim classified as 5(d)(2) is listed as

Bank of America. The correct holder for all purposes is CitiBank N.A. as Trustee for

CMLTI Asset Trust its successors and/or assigns by its duly authorized agent PennyMac

Loan Services, LLC.

## XI.    EXISTING STIPULATIONS

64.       Existing stipulations with creditors are the following:

a.  Stipulation re 1675 West Blvd, Los Angeles, CA 90019 has been filed as docket

no. 127.

b.  Stipulation re 13755 Driftwood Drive, Victorville, CA 92395 (First Lien) has been

filed as docket no. 98.

c.  Stipulation re 13755 Driftwood Drive, Victorville, CA 92395 (Second Lien) has

been filed as docket no. 94.  Order approving was entered as docket no. 96.

**REVISED PLAN ADDENDUM**

30
Date: September 29, 2014

X _____
Signature of Debtor

Joseph Williams
_____
Printed name of Debtor

30
Date: September 29, 2014

/s/ ALIK SEGAL
_____
Signature of attorney for Debtor, if any

Alik Segal 175159
_____
Printed name of attorney for Debtor, if any

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

30
Date: September 29, 2014

_____
Signature of Debtor

REVISED PLAN ADDENDUM

## EXHIBIT 12 - TS (Treatment Summary)

### Shedule D Claim Treatment - Mortgages

| Class | Name | Property | Post-pet'n arrears | FMV | Secured Claim | Term (y) | Term (mo) | Rate (ann) | P&I/mo | 1st Pmt date (Est) | Last Payment | Annual P&I | Lifetime P&I | Pmt/mo w/o 5303 | Pmt/mo w/o 5303, 5271 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5(a)(2) | FNMA - Federal National Mortgage As | 3629 S Genesee Ave, Los Angeles, CA 90016 | 10,512 | 362,000 | 372,512 | | 480 | 5.25% | 1,858 | 5/1/2014 | 4/1/2054 | 22,300 | 892,009 | 1,858 | 1,858 |
| 5(b)(1) | US Bank, N.A. | 1675 West Blvd, Los Angeles, CA 90019 | | 265,000 | 265,000 | | 402 | 4.00% | 1,198 | 7/15/2013 | 12/15/2046 | 14,372 | 481,446 | 1,198 | 1,198 |
| 5(f)(1) | Bank of America, N.A. | 5356 8th Ave, Los Angeles, CA 90043 | 12,291 | 300,000 | 312,291 | | 480 | 5.00% | 1,506 | 4/1/2014 | 3/1/2054 | 18,070 | 722,811 | 1,506 | 1,506 |
| 5(e)(1) | Citibank, N.A. | 13755 Driftwood Drive, Victorville, CA 92395 | | 172,000 | 172,000 | | 360 | 5.25% | 950 | 7/1/2013 | 6/1/2043 | 11,397 | 341,925 | 950 | 950 |
| 5(c)(1) | Bank of America, N.A. | 5271 Angeles Vista Blvd, Los Angeles, CA 90043 | 7,162 | 390,000 | 397,162 | | 480 | 5.00% | 1,915 | 7/1/2013 | 6/1/2053 | 22,981 | 919,249 | 1,915 | |
| 5(d)(2) | Bank of America, N.A. | 5303 Angeles Vista Blvd, Los Angeles, CA 90043 | 10,000 | 440,000 | 450,000 | | 480 | 5.25% | 2,245 | 1/1/2014 | 12/1/2053 | 26,939 | 1,077,560 | | |
| **TOTAL** | | | **39,965** | **1,929,000** | **1,968,965** | | | | **9,672** | | | **116,060** | **4,434,999** | **7,427** | **5,512** |

### Shedule D Claim Treatment - Property Tax

| Class | Name | Property | Post-pet'n arrears | FMV | Secured Claim | Term (y) | Term (mo) | Rate (ann) | P&I/mo | 1st Pmt date (Est) | Last Payment | Lifetime P&I |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5(a)(1) | Los Angeles County Tax Collector | 3629 S Genesee Ave, Los Angeles, CA 90016 | | | 138 | | 1 | 0.00% | 138 | 2/1/2015 | 2/1/2015 | 138 |
| 5(d)(1) | Los Angeles County Tax Collector | 5303 Angeles Vista Blvd, Los Angeles, CA 90043 | | | 105 | | 1 | 0.00% | 105 | 2/1/2015 | 2/1/2015 | 105 |
| **TOTAL** | | | | | **243** | | | | **243** | | | **243** |

### Shedule E Priority Claims Treatment

| Class | Name | | | Amount | Term (y) | Term (mo) | Rate (ann) | P&I/mo | 1st Pmt (Est) | Last Payment | Annual P&I | Lifetime P&I |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Priority Unsecured | Internal Revenue Service | | | 2,095 | 2.50 | 30 | 3% | 73 | 2/11/2015 | 7/11/2017 | 871 | 2,177 |

### Administrative (pre-confirm)

| Class | Name | Property | | Amount | Term (y) | Term (mo) | Rate (ann) | P&I/mo | 1st Pmt (Est) | Last Payment | Annual P&I | Lifetime P&I |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unclassified Administrative | Citibank, N.A. | 13755 Driftwood Drive, Victorville, CA 92395 | | 1,240 | 3 | 36 | 0% | 34 | 7/1/2013 | 6/1/2016 | 413 | 1,240 |
| Debtor's Counsel | Alik Segal (approximate & subj to court order) | | 250,000 | | 250,000 | 5 | 60 | 5% | 4,718 | 2/1/2015 | 1/1/2020 | 56,614 | 283,069 |

### General Unsecured Treatment

| Class | Number of Properties | Effective Date Family contribution | Total Unsec'd Claims | Dividend Rate (%) | Dividend Amount ($) | Term (y) | Term (mo) | Rate | P&I/mo | 1st Pmt (Est) | Last Payment | Annual P&I | Lifetime P&I |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Gen Uns'd** | 6 | | 1,479,969 | 5% | 73,998 | 5 | 60 | 0.00% | 1,233 | 2/1/2015 | 1/1/2020 | 14,800 | 73,998 |
| **Gen Uns'd** | 5 | | 1,020,388 | 5% | 51,019 | 5 | 60 | 0.00% | 850 | 2/1/2015 | 1/1/2020 | 10,204 | 51,019 |
| **Gen Uns'd** | 4 | | 740,780 | 5% | 37,039 | 5 | 60 | 0.00% | 617 | 2/1/2015 | 1/1/2020 | 7,408 | 37,039 |

| | 6 Props | 5 Props | 4 Props |
|---|---|---|---|
| Net Real Estate Income (after MTG etc.) | 110 | 205 | 456 |
| Net Music Income | 2,826 | 2,826 | 2,826 |
| **TOTAL NET TAKE-HOME INCOME** | **2,936** | **3,031** | **3,282** |
| **Personal Expenses** | **(1,500)** | **(1,500)** | **(1,500)** |
| **DISPOSABLE INCOME** | **1,436** | **1,531** | **1,782** |
| Schedule E Priority Claims Treatment | (73) | (73) | (73) |
| Unclassified Administrative | (34) | (34) | (34) |
| General Unsecured Treatment | (1,233) | (850) | (617) |
| **TOTAL DEBT SERVICE w/o ATTY FEES** | **(1,340)** | **(957)** | **(724)** |
| Admin (post confirm - UST, CPA, Life Insurance) | (600) | (600) | (600) |
| **TOTAL EXPENSES** | **(1,940)** | **(1,557)** | **(1,324)** |
| **Surplus (Deficit) w/o Atty Fees** | **(504)** | **(26)** | **458** |
| Debtor's Counsel | (4,718) | (4,718) | (4,718) |
| **Surplus (Deficit) w/ Atty Fees** | **(5,222)** | **(4,744)** | **(4,260)** |

## DECLARATION OF STELLA BERESTETSKY

I, Stella Berestetsky, do hereby declare as follows:

1. I have personal knowledge of the facts set forth herein, except where otherwise stated. If called upon to testify to the statements in this Declaration, I could and would competently do so under oath. The attached exhibits, if any, are true and correct copies of what they are described to be.

2. I am a resident of the State of California. I am over 18 years old and am competent to make this Declaration.

3. I reviewed the Revised Addendum dated September 30, 2014 and agree to the revised terms.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct, and that this declaration was executed by me on the 11th day of September, 2014, at Los Angeles, California.

Dated: September 30, 2014          /s/ Stella Berestetsky
                                     Stella Berestetsky, Declarant

## DECLARATION OF STELLA BERESTETSKY

| In re: | CHAPTER: **11** |
| **Joseph Williams** | |
| Debtor(s). | CASE NUMBER: **1:12-bk-20158-AA** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**433 N. Camden Dr. #400, Beverly Hills, CA 90210**

A true and correct copy of the foregoing document entitled (*specify*):  **Revised Plan Addendum; Declaration of Stella
Berestetsky** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR,
the foregoing document will be served by the court via NEF and hyperlink to the document. On   **09/30/2014**  , I checked the CM/ECF
docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice
List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On   **09/30/2014**  , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary
proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and
addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours
after the document is filed.

**Judge**
**The Honorable Alan M. Ahart**
**United States Bankruptcy Court**
**21041 Burbank Boulevard, Suite 342**
**Woodland Hills, CA 91367**

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each
person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____ , I served the following persons and/or entities by
personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission
and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be</u>
<u>completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 30, 2014 | Gregorey Grigoryants 286804 | /s/ Gregory Grigoryants |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June  2012*                                                                                                **9013-3.1.PROOF.SERVICE**

## 1:12-bk-20158-AA Notice will be electronically mailed to:

Mark Domeyer on behalf of Interested Party Courtesy NEF
mark.domeyer@wolffirm.com


Jacqueline S Eberhard on behalf of Creditor Bank of America, N.A., its assignees and/or successors
bknotice@mccarthyholthus.com


Lemuel Bryant Jaquez on behalf of Creditor Citibank, N.A. as Trustee for Bear Sterns ALT-A Trust,
Mortgage Pass-Through Certificates, Series 2006-8
bjaquez@mileslegal.com


Neil M Katsuyama on behalf of Creditor Maurice Stephenson
nmkatsuyama@jonesbell.com, neil.katsuyama@gmail.com


Vanessa Lewis on behalf of Creditor Ocwen Loan Servicing, LLC
vanessa.lewis@ocwen.com


Erica T Loftis on behalf of Creditor Wilmington Trust, N.A., as trustee for the structured asset mortgage
investments II trust, mortgage pass-through certificates, series 2007-AR2
bknotice@rcolegal.com


Terry Loftus on behalf of Creditor Bank of America, N.A.
bknotice@mccarthyholthus.com, tloftus@mccarthyholthus.com


Terry Loftus on behalf of Creditor Green Tree Servicing, LLC
bknotice@mccarthyholthus.com, tloftus@mccarthyholthus.com


Casey J OConnell on behalf of Creditor Citibank, N.A. as Trustee for Bear Sterns ALT-A Trust, Mortgage
Pass-Through Certificates, Series 2006-8
ch11ecf@piteduncan.com, mrc@ecf.inforuptcy.com


Casey J OConnell on behalf of Creditor U.S. Bank National Association, as Trustee for Greenpoint
Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR8
ch11ecf@piteduncan.com, mrc@ecf.inforuptcy.com


Casey J OConnell on behalf of Creditor U.S. Bank National Association, as Trustee, successor in interest
to Bank of America, National Association as Trustee as successor by merger to LaSalle Bank National
Association, as Trustee for Certif
ch11ecf@piteduncan.com, mrc@ecf.inforuptcy.com

Casey J OConnell on behalf of Interested Party Courtesy NEF
ch11ecf@piteduncan.com, mrc@ecf.inforuptcy.com

Renee M Parker on behalf of Creditor Federal National Mortgage Association (Fannie Mae), creditor c/o
Seterus, Inc.
bknotice@earthlink.net, rmparker@wrightlegal.net

Renee M Parker on behalf of Interested Party Courtesy NEF
bknotice@earthlink.net, rmparker@wrightlegal.net

Kelly M Raftery on behalf of Creditor Bank of America, N.A.
bknotice@mccarthyholthus.com

Kelly M Raftery on behalf of Creditor Wilmington Trust, NA, successor trustee to Citibank, N.A., as
trustee, on behalf of the holders of the Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-
A Trust II, Mortgage Pass- Throug
bknotice@mccarthyholthus.com

S Margaux Ross on behalf of U.S. Trustee United States Trustee (SV)
margaux.ross@usdoj.gov, margauxla@yahoo.com

John D Schlotter on behalf of Creditor CITIBANK N.A. AS TRUSTEE FOR CMLTI ASSET TRUST, BY
PENNYMAC LOAN SERVICES, LLC, ITS SERVICING AGENT
ecfmail@aclawllp.com

John D Schlotter on behalf of Creditor PennyMac Loan Services, LLC
ecfmail@aclawllp.com

Alik Segal on behalf of Debtor Joseph Williams
alik.segal@bkfort.com, alik.segal.ecf.mem@gmail.com

Timothy J Silverman on behalf of Creditor CITIBANK N.A. AS TRUSTEE FOR CMLTI ASSET TRUST, BY
PENNYMAC LOAN SERVICES, LLC, ITS SERVICING AGENT
tim@sgsslaw.com

Timothy J Silverman on behalf of Creditor Citibank, N.A. As Trustee For CMLTI Asset Trust its successors
and/or assigns by its duly authorized agent PennyMac Loan Services, LLC
tim@sgsslaw.com

Bill Taylor on behalf of Creditor SELECT PORTFOLIO SERVICING, INC.
ecfnotices@4stechnologies.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

Perry W Wade on behalf of Creditor Green Tree Servicing LLC
perry.w.wade@gt-cs.com

Edward T Weber on behalf of Interested Party Courtesy NEF
bknotice@rcolegal.com

**1:12-bk-20158-AA SERVED BY UNITED STATES MAIL:**

Charles Chase
25622 Horizon St.
Apple Valley, CA 92308

Internal Revenue Service
Centralized Insolvency Office
POB 7346
Philadelphia, PA 19101

Los Angeles County Tax Collector
225 N. Hill St., Rm. 130
Los Angeles, CA 90012

Brian T. Moynihan, President   - Via Certified Mail
Bank of America N.A.
100 North Tryon St
Charlotte, NC 28202