Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address

**Alik Segal (SBN 175159)**
**433 N. Camden Dr. #400**
**Beverly Hills, CA 90210**
**Phone: 310-362-6157**
**Fax:    310-382-2551**
**Alik.Segal@BkFort.com**

FOR COURT USE ONLY

☐ *Individual appearing without attorney*
☒ *Attorney for: **Debtor and Debtor-In-Possession***

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WOODLAND HILLS DIVISION

In re:

**Joseph Williams**

Debtor(s).

CASE NO.: **1:12-bk-20158-AA**

CHAPTER: **11**

**INDIVIDUAL DEBTOR'S FIRST AMENDED**
**CHAPTER 11 PLAN OF REORGANIZATION**
MODIFIED UNDER 11 U.S.C. Sect. 1127

DATE: ~~November 5, 2014~~   MAY 3, 2016
TIME: ~~10:00 am~~        1:30 pm
COURTROOM: **303**
PLACE: **21041 Burbank Boulevard**
       **Woodland Hills, CA 91367**

This plan of reorganization (the Plan) under chapter 11 of the Bankruptcy Code provides for restructuring of the debts of the above-named Debtor. If confirmed, the Plan will bind all creditors provided for in the Plan, whether or not they file a proof of claim, accept the Plan, object to confirmation, or have their claims allowed. All Creditors should refer to Articles I- IV of this Plan for the precise treatment of their claims. ~~A disclosure statement (the Disclosure Statement) that provides additional information is being served with this Plan.~~ The Disclosure Statement is explanatory only; the language used in the Plan is binding. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one.**

MODIFICATIONS ARE INDICATED BY CROSSING OUT TEXT AND/OR ADDING TEXT IN THIS COURIER FONT. CROSSED OUT TEXT SHALL BE DEEMED DELETED AND OF NO FORCE OR EFFECT.

Changed or added text is placed in a frame.

## Article I
## Treatment of Unclassified Claims

Under § 1123(a)(1)(i) administrative expense claims allowed under § 503(b) and entitled to priority under § 507(a)(2) (including the claims of professionals, United States trustee fees, and postpetition domestic support obligations; (ii) involuntary gap period claims under § 507(a)(3); and (iii) priority tax claims under § 507(a)(8) are

This form is optional.   It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 1                              **F 2081-1.PLAN**

not classified and are not entitled to vote on confirmation of the Plan. These claims shall be treated as follows:

A.    Professional Fees. Professional fees may only be paid upon application to and approval by the court. The Debtor will pay professional fees in full in cash on the later of (i) the Effective Date or (ii) upon court order, except to the extent that a holder of such claim agrees to other terms.

~~The application for payment of interim fees and expenses has been filed (docket no. 184) in the amount $197,353 in fees only covering the period from 11/19/2012 (petition) to 8/15/2014. The hearing is set for 9/17/2014.~~

B.    Other Administrative Claims. The Debtor will pay other claims allowed under § 503(b) and entitled to priority under § 507(a)(2), including domestic support obligations arising postpetition[1] and United States trustee fees, in full on the Effective Date (although expenses arising and paid in the ordinary course of Debtor's financial affairs may be paid as due), except to the extent that a holder of these claims agrees to other terms.[2]

| E | F |
|---|---|
| 9 | **Unclassified Administrative:** |
| 10 Creditor | Citibank, N.A. as Trustee for Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2006-8 (Driftwood postpetition arrears) |
| 11 Total amount of allowed claim: | $ 1,239.94 |
| 12 Term of Loan (years): | 3 |
| 13 Interest rate (to compensate creditor because claim is paid over time): | 0.00% |
| 14 Amount of each installment: | $ 34.44 |
| 15 Total yearly payments: | $ 413.31 |
| 16 Total amount of payments (over time) to satisfy the secured claim: | $ 1,239.94 |
| 17 First payment date: | 7/1/2013 |
| 18 Frequency of payments per month: | 1 |
| 19 Day of the month when the payment is due: | 1 |

C.    Tax Claims. The Debtor will pay claims entitled to priority under § 507(a)(8) in full over time with __3__ % interest in equal amortized payments in accordance with § 511. Payments will be made quarterly, due on the first day of the ☒ month ☐ quarter, starting on the first such date after the Effective Date and ending on the last such date that is no more than 5 years after the entry of the order for relief.[3]

---

[1]  Section 1129(a)(14) requires payment of all domestic support obligations arising postpetition.

[2]  Section 1129(a)(9)(A) requires payment in full of administrative expenses on the Effective Date.

[3]  Payment of priority tax claims in full within 5 years of the petition date and on terms not less favorable than those accorded the most favored nonpriority creditor is required by § 1129(a)(9)(C)  IF THE ABSOLUTE PRIORITY RULE APPLIES AND CLASS 6(B) VOTES TO REJECT THE PLAN, ADD THE FOLLOWING: "Accordingly, if Class 6(b) votes to reject the Plan and is paid in full over time, tax priority claimants will receive an interest rate of_____% and maturity on_____.  This treatment is at least as favorable as that received by Class 6(b)."

This form is optional.    It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 2                                    **F 2081-1.PLAN**

|  | C | D |
|---|---|---|
| 6 | **Tax Claims** | |
| 7 | Creditor | Internal Revenue Service |
| 8 | Total amount of allowed claim: | $          2,095.00 |
| 9 | Term of Loan (years): | 2.5 |
| 10 | Term of Loan (months): | 30 |
| 11 | Interest rate (to compensate creditor because claim is paid over time): | 3.00% |
| 12 | Amount of each installment: | $              34.44 |
| 13 | Total yearly payments: | $            870.86 |
| 14 | Total amount of payments (over time) to satisfy the secured claim: | $          2,177.16 |
| 15 | Frequency of payments per month: | 1 |
| 16 | Day of the month when the payment is due: | 1 |
| 17 | First payment date: | 2/11/2015 |
| 18 | Last payment date: | 7/11/2017 |
| 19 | 5 years from petition | 11/19/2017 |

D.     Involuntary Gap Period Claims pursuant to § 507(a)(3). The Debtor will pay claims allowed under § 502(f) in full on, or as soon as practicable after, the Effective Date except to the extent a holder of such claim agrees to other terms.[4]

## Article II
## Classification and Treatment of Claims

**Classes 1(a)-(e): Priority Claims.**

These impaired classes include allowed unsecured claims entitled to priority under § 507 (except administrative claims under § 507(a)(2), involuntary gap period claims under § 507(a)(3) and priority tax claims under § 507(a)(8), which are unclassified and treated in Article I). For instructions on voting, see Part 2 of the Disclosure Statement. If any Class does not vote to accept the Plan, then each claim in the non-accepting class will be paid in full on the Effective Date (except to the extent a holder of a claim agrees to other terms). Creditors in Class 1 are treated as follows (*Check each box that applies*):

☒     . Debtor has no creditors in Class 1

☐     Class 1(a): Unsecured domestic support obligation claims entitled to priority under § 507(a)(1). Debtor proposes to pay each claim in Class 1(a) in full over _____ years, with _____% postconfirmation interest. Payments will be made in equal ☐ monthly ☐ quarterly amortized installments, due on the first day of each calendar ☐ monthly ☐ quarterly, starting on the first such date after the Effective Date. This class is impaired and entitled to vote on confirmation of the Plan.

☐     Class 1(b): Wage and commission claims entitled to priority under § 507(a)(4). The Debtor proposes to pay each claim in Class 1(b) in full over_____years, with_____% postconfirmation interest. Payments will be

---

[4]    This treatment is required by § 1129(a)(9)(A).

This form is optional.   It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                   *Page 3*                                   **F 2081-1.PLAN**

made in equal ☐ monthly ☐ quarterly amortized installments, due on the first day of each calendar ☐ month ☐ quarter, starting on the first such date after the Effective Date. This class is impaired and entitled to vote on confirmation of the Plan.

☐        Class 1(c): Employee benefit plan contribution claims entitled to priority under § 507(a)(5). The Debtor proposes to pay each claim in Class 1(c) in full over_____ years, with _____% postconfirmation interest. Payments will be made in equal ☐ monthly ☐ quarterly amortized installments, due on the first day of each calendar ☐ month ☐ quarter, starting on the first such date after the Effective Date. This class is impaired and entitled to vote on confirmation of the Plan.

☐        Class 1(d): Grain producer and fisherman claims entitled to priority under § 507(a)(6). The Debtor proposes to pay each claim in Class 1(d) in full over___years, with_____% postconfirmation interest. Payments will be made in equal  ☐ monthly  ☐ quarterly amortized installments, due on the first day of each calendar month ☐ quarter, starting on the first such date after the Effective Date. This class is impaired and entitled to vote on confirmation of the Plan.

☐        Class 1(e): Consumer deposit claims entitled to priority under § 507(a)(7). The Debtor proposes to pay each claim in Class 1(e) in full over ____ years, with ____ % postconfirmation interest per annum. Payments will be made in equal ☐ monthly ☐ quarterly amortizing installments, due on the first day of each calendar ☐ month ☐ quarter, starting on the first such date after the Effective Date. This class is impaired and entitled to vote on confirmation of the Plan.

**Class 2: Secured claims on Debtor's principal residence.**

☒        Debtor has no creditors in Class 2

A.        <u>Unimpaired secured claims on Debtor's principal residence</u>. These classes include claims secured solely by the Debtor's principal residence. All arrearages shall be paid on, or as soon as practicable after, the Effective Date unless the holder of the claim agrees to other terms. Regular payments shall be made as they come due based on their respective governing loan documents, and except with respect to curing the arrearages, the Plan does not alter the legal, equitable or contractual rights of the creditor. The Debtor shall maintain current payments and the Plan must not otherwise alter the legal, equitable or contractual rights of the creditors to which that claim entitles the holder of the claim.

These classes are unimpaired and not entitled to vote on the Plan.

Class 2(a): Secured claim of: _____
                     Property address or description of collateral: _____
                     Priority of lien: _____
                     Total amount of allowed claim: $_____
                     Amount of arrearages: $_____
                     Regular monthly payment: $_____

B.        <u>Impaired secured claims on Debtor's principal residence</u>. These classes of secured claims on the Debtor's principal residence are impaired and therefore, entitled to vote under the Plan. The arrearages in the sum of $_____shall be paid over_____years with_____% interest. To cure the arrearages, the payments shall be made in ☐ monthly ☐ quarterly amortized installments beginning on the first day of each calendar ☐ month ☐ quarter after the Effective Date (Cure Payments). Ongoing payments shall be made as they come due based on their

This form is optional.    It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    *Page 4*                                    **F 2081-1.PLAN**

respective governing loan documents (Regular Payments).  The claim will be paid in full as a secured claim in this class pursuant to § 1123(b)(5).

Class 2(c):   Secured claim of: _____
              Property address or description of collateral: _____
              Priority of lien: _____
              Amount of arrearages: $_____
              Total amount of allowed claim as of_____:
                  ☐ Monthly   ☐ quarterly Cure Payment amount: $ _____
                  ☐ Monthly   ☐ quarterly Regular Payment amount: $ _____
              Total ☐  monthly ☐ quarterly payments: $ _____
              Total amount of payments (over time) to satisfy the secured claim: $_____
              Interest rate (to compensate creditor because claim is paid over time):_____%
              First payment date: _____
              Amount of each installment: $ _____

              Frequency of payments: _____

              Total yearly payments: $_____ Final payment date: _____
              Monthly payments will be due on the first day of the month.

### Class 3: Unimpaired secured claims on property other than the Debtor's principal residence.

       ☒       Debtor has no creditors in Class 3

       This class includes claims secured by a lien on property other than the Debtor's principal residence in which Debtor has an interest that is unimpaired under the Plan. Debtor will cure any default that occurred before or after the petition date in this case, reinstate the maturity of that claim as such maturity existed before the default, maintain current payments, and not otherwise alter the legal, equitable or contractual rights to which that claim entitles the holder of the claim.  All arrearages shall be paid in full on, or as soon as practicable after, the Effective Date, unless the holder of the claim agrees to other terms.  Regular payments made thereafter will be made when due under the documents governing claim.

       These classes are unimpaired and not entitled to vote on the Plan.

Class 3(a):  Secured claim of: _____
             Description of collateral: _____
             Priority of lien: _____
             Total amount of allowed claim: $_____
             Amount of arrearages: $_____
             Regular monthly payment: $_____

### Class 4: Unimpaired secured claims on Collateral to be Surrendered by Debtor.

       ☒       Debtor has no creditors in Class 4

       This class includes claims secured by a lien on property in which the Debtor has an interest that are unimpaired under the Plan.  Debtor will not retain interest in such property(ies) and will surrender such collateral to the secured creditor:  ☐ not later than Effective Date      ☐ by (date): _____

Class 4(a):  Secured claim of: _____
             Description of collateral: _____
Class 4(b):  Secured claim of: _____
             Description of collateral: _____

This form is optional.   It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                          *Page 5*                          **F 2081-1.PLAN**

**Series 5 Classes:    Impaired Secured Claim Classes**

> These classes include claims secured by a lien on property other than the debtor's principal residence in which Debtor has an interest, other than the secured claims in Class 2 and the unimpaired secured claims in Classes 3 and 4.

> The secured portion of the following impaired class(es) shall be paid as set forth below.

Ongoing payments shall be made ☐ as they come due based on their respective governing loan documents (Regular Payments), or ☒ in modified payments as described below. The amount of the claim, if any, in excess of the secured claim is an unsecured claim in Class 6. However, if the holder of a secured claim makes a timely and valid §1111(b) election, the claim shall be treated as a secured claim notwithstanding § 506(a).

> THE EXHIBIT 2 - ISCC LISTS IMPAIRED SECURED CLAIM CLASSES AND THEIR PROPOSED TREATMENT UNDER THE PLAN  – THIS EXHIBIT 2 IS APPENDED HERETO AND INCORPORATED BY REFERENCE.

If a secured creditor disputes the value of its collateral as stated above, that secured creditor must timely file an objection to confirmation of the Plan, or the value stated by Debtor may be determined to be the value of the collateral. The objection must be accompanied by competent evidence of valuation. If the value of the collateral is disputed, the court may schedule a separate hearing to determine value.

To the extent that certain creditors' claims are entitled to various amounts due because defaults are not cured or paid in full on or before the Effective Date, those classes of creditors are impaired and entitled to vote on the Plan. See Part 2 of the Disclosure Statement for instructions on voting.

**Class 6:  General Unsecured Claims**

☐    Class 6(a):  Smaller Unsecured Claims. This class includes any allowed unsecured claim of $ ____ or less and any allowed unsecured claim larger than $____but whose holder agrees to reduce its claim to $ _____. Each member of this class shall receive on the Effective Date, or as soon as practicable thereafter, a single payment equal to 100% of the allowed claim. This class is unimpaired and not entitled to vote on the plan.

☒    Class 6(b): Other General Unsecured Creditors. This class includes all allowed unsecured claims not in Class 6(a) and not entitled to priority. Each member of Class 6(b) shall be paid __5__ % of its claim over __5__ years  in equal ☒ monthly ☐ quarterly installments, due on the first day of each calendar ☒ month ☐ quarter, ☐ with interest at the rate of _____% per annum ☒ without interest starting on the first such date after the Effective Date. If payments are not proposed as equal monthly installments, they will be paid as follows:  __Debtor may pay the amounts due to this class ahead of the schedule.__

This class is impaired and entitled to vote on confirmation of the Plan. For instructions on voting, see Part 2 of the Disclosure Statement.

> Undisputed Class 6 claims, as of this date, are listed on Exhibit 3 - GUC.
> – THIS EXHIBIT 3 IS APPENDED HERETO AND INCORPORATED BY REFERENCE.

## Article III
## Allowance and Disallowance of
## Claims

A.    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed and as to which either:
(i)   a proof of claim has been filed or deemed filed and the Debtor or another party in interest has filed an objection; or
(ii)  no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent, unliquidated or unknown.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                              Page 6                              F 2081-1.PLAN

B.    <u>Delayed Distribution on Disputed Claims</u>.  No distribution will be made on account of that portion of a claim that is disputed unless it is allowed by final nonappealable order.

C.    <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with FRBP 9019 unless the amount allowed by the compromise does not exceed $_____, in which case no court approval is necessary.

> NONE OF THE DISPUTED CLAIMS HAVE BEEN ALLOWED. SEE EXHIBIT 4 - <u>DC</u> FOR A LISTING. - THIS EXHIBIT 4 IS APPENDED HERETO AND INCORPORATED BY REFERENCE.

### Article IV
### Executory Contracts and Unexpired Leases

A.    <u>Executory Contracts and Leases Assumed</u>.  The Debtor assumes the executory contracts and unexpired leases enumerated in Exhibit E to the Disclosure Statement, effective upon the Effective Date, and shall perform all obligations thereunder, both preconfirmation and postconfirmation.  Any preconfirmation arrearages shall be paid by the Effective Date, unless the parties agree otherwise or the court finds that a proposed payment schedule provides timely cure and adequate assurance of future performance.  Postconfirmation obligations will be paid as they come due.

B.    <u>Executory Contracts and Leases Rejected</u>.  The Debtor is conclusively deemed to have rejected all executory contracts and/or unexpired leases not previously assumed or listed in Exhibit E to the Disclosure Statement as of the Effective Date.  A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.  Claims arising from the rejection of an executory contract or unexpired lease under this section are general unsecured claims in Class 6, except to the extent this court orders otherwise.

### Article V
### Means of Implementation

The Plan will be funded through (*Check each box that applies*):

a.  ☒ **$10,000**  of cash available on the date of the Plan confirmation hearing (See Exhibit 11 - PBS);

b.  ☒ ~~A sale of the following property (*describe*)~~

> ~~Classic Car (1923 Buick Convertible) FMV 19,000, which the Debtor estimates will produce $ 16,000;~~

c.  ☒ additional cash from projected disposable income
(Projected core disposable income to be $ 1,326 /month for the  **5**  year(s)[5] following confirmation); and/or

d.  ☒ other sources of funding, as follows:

> ~~Investor Ms. Stella Berestetsky will make available up to $60,000 to assure plan success. See Addendum for the full description. Please see Part 3 of the Disclosure Statement for further details of these projections.~~

### Article VI
### Discharge and Other Effects of
### Confirmation

---

[5]  This number should match the number of years selected for payments made to creditors under the plan and the number of years of projected disposable income calculated in Part 3.C. of the Disclosure Statement.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012    Page 7    **F 2081-1.PLAN**

A.    Discharge. Upon completion of all payments under the Plan, the Debtor shall receive a discharge of all preconfirmation debts, whether or not the creditor files a proof of claim, or accepts the Plan, unless the court orders otherwise. Such discharge will not discharge Debtor from any debts that are nondischargeable under § 523 or the obligations created by this Plan.

B.    Vesting of Property. On the Effective Date, all property of the estate will vest in the reorganized debtor pursuant to § 1141(b), free and clear of all claims and interests except as provided in the Plan.

See Addendum for vesting.

C.    Plan Creates New Obligations. Except as otherwise stated in the Plan, the payments promised in the Plan constitute new contractual obligations that replace those obligations to creditors that existed prior to the Effective Date.

D.    Creditor Action Restrained. Creditors may not take any action to enforce either preconfirmation obligations or obligations due under the Plan, so long as the Debtor is not in material default under the Plan. If the Debtor is in material default under the Plan, affected creditors may: (i) take any action permitted under nonbankruptcy law to enforce the terms of the Plan; or (ii) move to dismiss this case.

E.    Material Default Defined. If Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 14 days after the time specified in the Plan, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of default. The Debtor is in material default under the Plan if the Debtor fails within 21 days of the service of such notice of default, plus 3 additional days if served by mail, either: (i) to cure the default or (ii) to obtain from the court an extension of time to cure the default or a determination that no default occurred.

F.    Retention of Jurisdiction. This court retains jurisdiction until all Plan payments have been made.

## Article VII
## General Provisions

A.    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in the Plan.

B.    Effective Date of Plan. The Effective Date of the Plan is 14 days following the date of the entry of the order confirming the Plan. But, if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

C.    Cramdown. Debtor reserves the right to seek confirmation of the Plan notwithstanding the rejection of the Plan by one or more classes of creditors, pursuant to § 1129(b).

D.    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

E.    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of the Plan.

F.    Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or FRBP), the laws of the State of California govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in this Plan.

G.    Final Decree. Pursuant to FRBP 3022, a Final Decree may not be entered until a bankruptcy case is

This form is optional.   It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 8                                    **F 2081-1.PLAN**

Case 1:12-bk-20158-MB   Doc 394   Filed 06/03/16   Entered 06/03/16 18:00:37   Desc
Main Document      Page 9 of 42

SEP-13-2014 09:56 From:                          To:13103822551                Page:9/9
Case 1:12-bk-20158-AA   Doc 188   Filed 09/12/14   Entered 09/12/14 20:06:49   Desc
Main Document      Page 9 of 57

fully administered.   The court may, however, allow a Final Decree to be entered at an earlier date if requested in
Miscellaneous Provisions (below), or for cause shown.

     H.   Miscellaneous Provisions:

- ~~Attorney Alik Segal may ask the Court to close the case and enter the final decree before his fees are paid in full.~~
- ~~Debtor is hereby advised to seek independent legal counsel from an experience chapter 11 attorney to make sure that the plan is fair to him.   Because this plan and disclosure statement were prepared under tight time constraints, Debtor will have an opportunity at the confirmation hearing to ask the judge to remove any provision that unfairly favors Attorney over the Debtor.~~

     I.   ☒ See attached Addendum.

Date: <u>September 12, 2014</u>

    /s/ Joseph Williams
    Signature of Debtor

    **Joseph Williams**
    Printed name of Debtor

Date: <u>September 12, 2014</u>

    /s/ Alik Segal
    Signature of attorney for Debtor, if any

    **Alik Segal**
    Printed name of attorney for Debtor, if any

This form is optional.   It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                               Page 9                               F 2081-1.PLAN

1  Alik Segal (SBN 175159)
   Law Offices of Alik Segal
2  433 N. Camden Dr. #400
   Beverly Hills, CA 90210
3  Telephone: (310) 362-6157
   Facsimile: (310) 382-2551
4  E-mail: Alik.Segal@BkFort.com
5  *Attorney for Debtor and*
   *Debtor-in-Possession*
6
7
8
                    **UNITED STATES BANKRUPTCY COURT**
9                    **CENTRAL DISTRICT OF CALIFORNIA**
                        **SAN FERNANDO DIVISION**
10
11
12  In re:                              Chapter 11
13                                      Case No.: 1-12-bk-20158-AA
14
                                        **SECOND REVISED PLAN ADDENDUM TO**
15      JOSEPH WILLIAMS,                **FIRST AMENDED PLAN OF**
                                        **REORGANIZATION OF JOSEPH WILLIAMS**
16                                      **DATED SEPTEMBER 12, 2014**
                                        AS MODIFIED UNDER 11 U.S.C. Sect. 1127
17
18                                      Plan Confirmation Hearing:
                                        Date:   December 23, 2014
19                                      Time:   10:00 AM
            Debtor and                  Ctrm:   303
20          Debtor-In-Possession        Place:  21041 Burbank Boulevard
21                                              Woodland Hills, CA 91367
22
23
24  **TO THE HONORABLE ALAN M. AHART, UNITED STATE BANKRUPTCY JUDGE,**
25  **UNITED STATES TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**
26  References in this document to "Attorney's" fees and or costs are to the
    attorneys' fees and costs of The Orantes Law Firm, P.C. or Giovanni Orantes,
27  Esq. for post-confirmation services or attorneys' fees and costs allowed by
    the Court for the Law Offices of Alik Segal or Alik Segal, Esq.
28

# Table of Contents

I.     PREFACE ...................................................................................................................... 3

II.    PLAN SUMMARY ......................................................................................................... 4

III.   EXPLANATION OF THREE ALTERNATIVE PLANS FOR FOUR, FIVE, AND SIX PROPERTIES ................... 9

IV.    INVESTOR ENGAGEMENT ........................................................................................ 10

V.     INVESTOR COMPENSATION ..................................................................................... 12

VI.    INVESTOR OBLIGATION ........................................................................................... 12

VII.   INVESTOR PROTECTION ........................................................................................... 13

VIII.  CLARIFICATION OF EXHIBIT 14 – MS .................................................................... 17

IX.    RESOLVING MANAGEMENT TITLE OBSTACLES TO PROPERTY SALES ................... 18

X.     GENERAL TERMS ...................................................................................................... 21

XI.    EXISTING STIPULATIONS ......................................................................................... 22

XII.   NEW PARAGRAPHS IN SECOND REVISED ADDENDUM ......................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

### REVISED PLAN ADDENDUM

### I. PREFACE

1. On September 12, 2014, Joseph Williams, Debtor and Debtor-in-possession in the above captioned case ("Debtor") filed his First Amended Plan of Reorganization ("Plan") and First Amended Disclosure Statement in Support of the Plan ("Disclosure Statement") (Doc 188). On September 30, 2014, Debtor filed a Revised Plan Addendum ("Revised Addendum") primarily to improve readability and assure that all key facts mentioned in the Plan and Disclosure Statement are organized into a single internally consistent and complete document (Doc 193). On November 18, 2014, the Court entered an Order approving Debtor's Disclosure Statement (Doc 215).

2. On December 10, 2014, Wilmington Trust, N.A. ("Wilmington Trust") filed an objection to confirmation of the Debtor's Plan as the Class 5(e)(1) creditor with respect to the first lien secured by the property located at 13755 Driftwood Dr., Victorville, CA 92395 ("Wilmington's Objection") (Doc 225). This objection has now been resolved via a narrow change in the plan. At the time of writing, Wilmington Trust, by counsel, has orally committed to withdraw the objection and vote in favor of confirmation.

3. On December 11, 2014, Green Tree Servicing, LLC ("Green Tree") filed an objection to confirmation of the Debtor's Plan as the Class 5(c)(1) creditor secured by the property located at 5271 Angeles Vista Boulevard, Los Angeles, CA 90043 ("Green Tree's Objection"). This objection has now been resolved via a narrow change in the plan. At the time of writing, Wilmington Trust, by counsel, has orally committed to withdraw the objection and vote in favor of confirmation.

SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014

4. Debtor now files this Second Revised Plan Addendum ("2nd Revised Addendum") to add certain corrective provisions in order to resolve Wilmington's and Green Tree's Objections. The 2nd Revised Addendum only amends the plan treatment of the Wilmington Trust as Class 5(e)(1) creditor and the plan treatment of the Green Tree as the Class 5(c)(1) creditor.

5. With respect to all other classes of creditors, the 2nd Revised Addendum provides no new terms, facts or financial figures. It only highlights, explains or reorganizes facts and figures that had been included in the original Addendum and Revised Addendum or provides background information.

## II.    PLAN SUMMARY

1. The Debtor Joseph Williams ("Debtor") fought valiantly to preserve and improve his chapter 11 bankruptcy estate, consisting of six properties—five single family residences and one duplex. He overcame obstacles from which most ordinary business people would shrink. Four of the six properties were vacant and severely distressed. Debtor managed to accomplish his goals of rehabilitating these properties on a limited budget, while securing cooperation from a co-owner, the relationship with whom had been difficult.

2. The six properties are

- 13755 Driftwood Dr., Victorville, CA 92392 ("Driftwood")

- 1675 West Blvd, Los Angeles, CA 90019-5809 ("West Blvd.")

- 5356 8th Ave, Los Angeles, CA 90043-4856 ("8th Ave.")

SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014

- 3629 S Genesee Ave, Los Angeles, CA 90016-5009 ("Genesee Ave.")

- 5271 Angeles Vista Blvd., Los Angeles, CA 90043 ("5271 AV")

- 5303 Angeles Vista Blvd., Los Angeles, CA 90043 ("5303 AV")

3. Properties Driftwood, West Blvd., and 8th Ave. may be referred to collectively as "DW8".

4. Properties Genesee Ave., 5271 AV, and 5303 AV may be referred to collectively as "GAV".

5. Properties 5271 AV, and 5303 AV may be referred to collectively as "AV".

6. Now Debtor proposes a feasible plan, ~~in which liquidity is assured by a well-heeled investor Ms. Stella Berestetsky ("Investor"). Investor, who is an experienced real estate investor, agrees to disburse up to $60,000 until plan goals are accomplished. These goals include paying off unsecured plan obligations, returning Investor's capital with modest profit, and paying off chapter 11 attorney's fees, in that order. To fund this plan, Debtor proposes to sell some properties, particularly those that present management challenges.~~

7. The Plan proposes to pay the unsecured obligations and administrative overhead until one or more properties are sold to pay off the unsecured plan obligations in full. ~~Any remainder from the first sale and, if necessary, proceeds from subsequent sales will be used to pay down or pay off the Investor's disbursements. Investor's funds will not be used to pay the fees of Debtor's attorney Alik Segal ("Attorney").~~ Attorney will be paid only after ~~both~~ the unsecured creditors ~~and the Investor~~ have been paid in full.

8. Marketing of three of the six properties involves certain title difficulties. Two properties, which are located on Angeles Vista Boulevard in Los Angeles, California ("AV

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

properties"), are co-owned with Mr. Maurice Stephenson ("Co-owner").  Co-owner

holds title to fifty percent (50%) of AV properties.  Ms. Esther Escalante ("Gratuitous

Transferee") did not pay any consideration for her share and holds title to five percent

(5%) of three of these properties—AV properties and the property located on Eighth

Avenue in Los Angeles, California ("8[th] Ave. property").  Debtor holds title to forty five

percent (45%) of each AV property and ninety-five percent of 8th Ave. property.  See

Figure 1 immediately below.



FIGURE 1

| Co-owner 50% | Co-owner 50% | Debtor 95% |
| Debtor 45% | Debtor 45% | |
| 5% Gratuitous Transferee | 5% Gratuitous Transferee | 5% Gratuitous Transferee |
| 5271 Angeles Vista | 5303 Angeles Vista | 5356 8th Ave |
| Los Angeles, CA 90043 | Los Angeles, CA 90043 | Los Angeles, CA 90043 |

9.  Because Gratuitous Transferee paid no value for the transfer, her interest is vulnerable

to an action for quiet title.  Muktarian v. Barmby, 63 Cal.2d 558 (1965).  Once the title of

Gratuitous Transferee is cleared, the properties can be marketed.  AV properties will be

marketed either with Co-owner's consent or pursuant to a partition action.  Although

cooperation had been difficult to achieve in the past, Debtor hopes that a sale of AV

SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014

1    properties will be achieved cooperatively.  Otherwise a partition action will be

2    necessary.

3    10. General Unsecured Creditors ("GUC") and other unsecured obligation (collectively "Plan

4
5    Unsecured Claimants" or "PUC") will receive regular monthly payments according to the

6    plan.  Debtor will have the right to pay off the PUC early.

7    11. At any time after confirmation during the plan period, upon completion of payments to

8
9    all unsecured creditors and professional claimants, Debtor may apply to the Court and

10   obtain discharge and the final decree closing the case.  ~~Investor may ask the court to~~

11   ~~close the case and enter the final decree before her investment plus profit are paid in~~

12   ~~full.  Attorney may ask the court to close the case and enter the final decree before his~~

13
14   ~~fees are paid in full.~~

15   ~~12. This plan contemplates that the title and ownership of some or all properties will be~~

16   ~~transferred to and respective mortgages assumed.  The transferee and the party~~

17   ~~assuming will be either Attorney or a special purpose entity ("SPE") (a business entity or~~

18
19   ~~a trust) that will be owned or otherwise controlled by Attorney.  The plan contemplates~~

20   ~~two scenarios:~~

21       ~~a.  In first scenario, known as Attorney Control scenario, all six properties are treated~~

22       ~~similarly.  Transferee will receive from Debtor title to all six properties and will~~

23
24       ~~assume each relevant plan mortgage.  See Investor Protection section below~~

25       ~~concerning transfer and assumption.~~

26       ~~b.  In the second scenario, known as Split Control scenario, transferee will receive~~

27
28       ~~title to and will assume plan mortgages encumbering three properties—Genesee,~~

SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014

1   ~~5271 Angeles Vista, and 5303 Angeles Vista (collectively "GAV"). No other~~

2   ~~transfers of title and assumption of mortgages will take place. Title to three~~

3   ~~other properties--Driftwood, West, and 8th Avenue (collectively "DW8")--remains~~

4
    ~~with the debtor. Debtor also remains the sole party liable on the DW8 plan~~
5
6   ~~mortgages.~~

7   ~~c.   Under either scenario, after the transfer and assumption the contractual rate of~~

8   ~~ten percent (10%) will be reduced to five percent (5%).~~
9
10  ~~13. Exhibit 12 - TS (Treatment Summary) provides the big picture of the treatment of~~

11  ~~various allowed claims. Treatment Summary format has been cosmetically revised to~~

12  ~~improve readability.~~

13  ~~a.   Column "Dividend Amount ($) after family contribution" was duplicative and has~~
14
15  ~~been removed.~~

16  ~~b.   Rows "Eunice Walker" and "Family and Friends" were empty and were also~~

17  ~~removed.~~
18
19  ~~c.   Some blank lines have been removed.~~

20  ~~d.   Some headings have been reduced from three lines to two lines.~~

21  ~~e.   Column and row headings have been added for easy reference.~~
22
23  ~~f.   Revised Treatment Summary is attached hereto as Exhibit 12A - TS.~~

24  ~~14. Exhibit 14 - MS (Management Standards), added to the filed Plan pursuant to Investor's~~

25  ~~request, contains good business practices that Debtor is expected to uphold. If Debtor~~
26
    ~~fails to uphold specified practices or specified plan obligation, property management~~
27
28

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

1    ~~responsibilities will be transferred to a professional manager.  See Exhibit 14 for~~

2    ~~specifics.~~

3        ~~a.  It should be clarified that the allotment of liquid funds that Debtor will maintain~~

4        ~~for day to day expenses of $1,800 is for six properties and is equivalent to $300~~

5

6        ~~per property.  When a property is sold the total allotment will be reduced by~~

7        ~~$300.~~

8        ~~b.  Exhibit 14-MS (Management Standards) was drafted for the Attorney Control~~

9

10        ~~scenario.  Under the Split Control scenario, management standards will apply~~

11        ~~differently depending on whether they relate to the entire case or one or more~~

12        ~~properties.~~

13            ~~i.  Management standards that apply to the entire case continue in full force~~

14

15            ~~under Split Control scenario.~~

16            ~~ii.  Management standards that apply to particular properties continue in full~~

17            ~~force only with regard to properties under Debtor control.~~

18
     ~~15. Exhibit 15 – AFC (Attorney Financial Condition) shows Attorney's FICO score of 753.~~
19

20    ~~Since this plan gives some management responsibilities and some discretion to~~

21    ~~Attorney, his FICO score is offered to demonstrate that Attorney is responsible in~~

22    ~~management of his own financial affairs and may be trusted with plan management~~

23

24    ~~responsibilities and management discretion.~~

25

26    **III.    EXPLANATION OF THREE ALTERNATIVE PLANS FOR FOUR, FIVE, AND SIX PROPERTIES**

27

28

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF**
**REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

16. Debtor has six income properties. Debtor's real estate income and opportunity to

benefit from property appreciation depend on which of the three scenarios is included

in the confirmed plan.  Alternative proposals include:

    a.  keeping all six properties,

    b.  keeping five properties and abandoning one of two properties located at Angeles

       Vista Blvd. (collectively "AV Properties"), and

    c.  keeping four properties and abandoning both AV Properties.

17. The rationale for treating AV properties differently is as follows.

    a.  These properties are running a small deficit.

    b.  These properties are co-owned with Mr. Stephenson.  The relationship with the

       co-owner has been difficult, and this creates a management problem.

18. Assuming that the properties are included in the postconfirmation estate, the

management problem will be addressed postconfirmation via a consensual sale or a

partition.

Mr. Williams elects to retain all six properties, but may sell any of a
number of properties if it turns out, in his discretion, that he cannot
otherwise satisfy his obligations under the plan.

IV.    ~~INVESTOR ENGAGEMENT~~

~~19. Investor is a successful real estate investor with substantial liquid assets and disposable~~

~~income.  She promises to advance up to $60,000 to insure plan success.  These funds~~

~~will not be used to pay the plan fees of Attorney Alik Segal ("Attorney").~~

~~20. Exhibit 7 – SD contains two declarations by Investor.  The first declaration concerns~~

~~Investor's financial condition and appears on pages 33-36 of FAPDS.  The second~~

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

1    ~~declaration deals with the terms of her engagement and appears on pages 37-39 of~~

2    ~~FAPDS.~~

3    ~~21. The financial condition declaration gives certain figures of net worth and disposable~~

4    ~~income. In order to protect Investor's privacy Exhibit A does not show Investor's full net~~

5    ~~worth, liquid assets, and disposable income. Instead it shows that the net worth~~

6    ~~exceeds $400,000, liquid assets exceed $100,000, and disposable income after financial~~

7    ~~assistance to other persons exceeds $6,000 per month. The actual net worth, liquid~~

8    ~~assets, and disposable income after financial assistance to other persons are each~~

9    ~~greater. Exhibit B to the financial condition declaration is a certificate of deposit with~~

10   ~~the face value of $96, 146. Sixty thousand dollars from this certificate of deposit~~

11   ~~account will be available to invest in this case.~~

12

13   ~~22. The goal of investor's engagement is to provide liquidity until, first and foremost,~~

14   ~~unsecured plan obligations have been paid off. For this reason, she is not interested in~~

15   ~~the risky (but potentially profitable) strategy of generating a large balance and deriving~~

16   ~~from that balance substantial amounts of profit. Her goal is to see unsecured~~

17   ~~obligations paid in full from the first sale (if possible), and then to reduce her balance by~~

18   ~~getting paid as quickly as possible after the unsecured obligations are paid. After~~

19   ~~Investor's balance is reduced or entirely eliminated, her obligation to disburse up to the~~

20   ~~maximum of $60,000 continues.~~

21   ~~23. For example, it is a foreseeable scenario that the investor disburses $30,000. The~~

22   ~~proceeds of the first sale pay the unsecured plan obligations in full and pay $20,000 to~~

23   ~~the Investor. Investor's balance is reduced to $10,000. Thereafter she has the~~

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

1    ~~obligation to disburse additional $50,000.  Her goal, after her balance is reduced, is to~~

2    ~~continue to provide liquidity until she and the Attorney can be paid in full.~~

3

4    ~~V.    INVESTOR COMPENSATION~~

5

6    ~~24. Investor will receive compensation for being available to provide funds, for providing~~

7    ~~funds, and for consulting concerning real estate investment and property management.~~

8

9    ~~25. For being available to provide funds and for consulting concerning real estate~~

10    ~~investment and property management, Investor will receive ten percent (10%) of~~

11    ~~attorney's fees ultimately collected.~~

12

13    ~~26. For actually providing funds and consulting concerning real estate investment and~~

14    ~~property management, upon case termination, Investor will receive her funds with 10%~~

15    ~~interest.  Some important exceptions apply and are discussed in the Investor Protection~~

16    ~~section.~~

17

18    ~~VI.    INVESTOR OBLIGATION~~

19

20

21    ~~27. Investor obligation is limited in the following ways.~~

22    ~~28. Investor will have no obligation to pay Attorney's fees awarded in this case.  These fees~~

23    ~~will be paid from sale proceeds after the investment is repaid with profit.~~

24

25    ~~29. Investor obligation to disburse funds will be enforceable only by Attorney and will not~~

26    ~~extend to his assigns, successors, heirs, legatees, personal representatives or any other~~

27    ~~third parties.  Attorney, of course, has a keen interest in seeing that the Plan Unsecured~~

28    ~~Claimants ("PUC") are paid because he is paid only after the PUC and the Investor.~~

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

30. Investor obligation will be limited under force majeure and frustration of purpose

doctrines. For example, Investor will have no obligation to continue investing in case of

events such as war, riots, environmental disaster affecting the property, eminent

domain, etc. However, Investor will still have the right to collect on her investment

pursuant to plan mechanisms to the extent possible.

31. Investor obligation ends when the Plan Unsecured Creditors are paid in full, Investor

receives back her investment with profit, and Attorney receives his awarded attorney's

fees.

**VII.   INVESTOR PROTECTION**

32. Since Debtor has not been able to find an investor, Attorney's long-term friend Stella

Berestetsky ("Investor") has agreed to step in and help Debtor. She is only willing to do

this as a personal favor to Attorney. Investor is very busy dealing with her own affairs.

She would not take time from her work and family or put money at risk if this was only

about money. As any other experienced investor who is coming to save a very

precarious and risky situation, she wants to have her investment protected to the

greatest extent possible. She is entering this case completely blind without having met

Debtor, without knowing anyone on Debtor's team and without having current

appraisals. She is going into this case and into this investment based solely on

Attorney's word.

33. Accordingly, Investor is willing to help Debtor only if Attorney will be fully in charge,

under the Court's review and supervision, over some or all properties. In the Attorney

SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014

1   ~~Control scenario, Attorney will have full control over all six properties. In the Split~~

2   ~~Control scenario, Attorney will have full control over three properties (GAV), and Debtor~~

3   ~~will have full control over three other properties (DW8).~~

4   ~~34. Upon case termination, Investor will generally receive her funds with 10% interest.~~

5

6   ~~There are two limited circumstances where Investor will receive her investment back~~

7   ~~with 100% profit.~~

8       ~~a.  The goal of this first situation where 100% annual profit will apply is to motivate~~

9

10      ~~Debtor to provide his entire disposable income of $1,326/month.  If Debtor fails~~

11      ~~to provide entire $1,326 and Investor needs to replace any shortfall, she will~~

12      ~~earn 100% annual profit on that shortfall.  To cut off the profit, Debtor will be~~

13      ~~free to replace the shortfall within days, weeks, months, or as quickly as possible~~

14

15      ~~through assistance from friends and family.  Debtor must bring into the estate a~~

16      ~~steady stream of $1,326/mo.  It is not sufficient for Debtor to bring in nothing in~~

17      ~~one month and bring in $2,652 in the subsequent month.~~

18

19      ~~b.  The goal of this first situation where 100% annual profit will apply is to~~

20      ~~encourage Debtor to produce quality financial reports cost-effectively.  Exhibit~~

21      ~~14—MS (Management Standards), added pursuant to Investor's request,~~

22      ~~contains good business practices that Debtor is expected to uphold.~~

23

24      ~~Preconfirmation Debtor has spent substantial financial resources to prepare~~

25      ~~quality reports.  Preconfirmation, this money came mostly from Debtor's~~

26      ~~friend—from outside the estate.  This condition continues the status quo.  The~~

27

28      ~~Investor is not responsible to resolve the difficulty Debtor encountered in~~

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

1   creating quality reports. It is the responsibility of Debtor and his team to solve

2   this problem. If Debtor cannot solve the problem of preparing cost-effective

3   quality reports postconfirmation, and Investor has to advance funds for this

4   purpose, then Investor should receive annual profit until Debtor is able to

5

6   replace these funds.

7   35. Investor requests as a condition of her participation that after confirmation, title and

8   ownership of some or all properties be transferred to and respective mortgages assumed

9   by either Attorney or a special purpose entity ("SPE") (a business entity or a trust) that

10   will be owned or otherwise controlled by Attorney. Under the Attorney Control scenario,

11

12   all six properties will be transferred. Under the Split Control scenario, three properties—

13   GAV—will be transferred, while three properties—DW8—will remain with the Debtor.

14

15   36. One of the goals of this SPE is to prevent the properties to be subject of additional

16   bankruptcy proceedings, and the SPE will be designed specifically for this purpose.

17   Upon payment of debt to Investor and Attorney and upon Debtor receiving discharge,

18

19   title and ownership of remaining properties will be restored to Debtor, and he will

20   assume respective mortgages. Debtor will also have the option to paying off plan debts

21   by prepaying some or all mortgages. This provision may be uncommon, but it is

22

23   necessary for the execution of this plan. As a corollary, to the extent that some

24   stipulations or loan documents contain clauses to the contrary, this plan, if confirmed,

25   will supersede these clauses.

26

27

28

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

37. Although the title to estate real property may be held in the name of Attorney or a special purpose entity, such as a business entity or a trust, Debtor will remain liable to the mortgagees, as he would be if he held title directly and was the mortgagor.

38. On the Effective Date, or as soon thereafter as practical, Investor will receive a secured instrument similar to a secured line of credit, a note secured by a recorded trust deed. Unlike ordinary lines of credit, no payment will be due on this line of credit until funds are available to pay down or pay off the balance.

39. When the case terminates successfully or otherwise, investment plus profit will become a balloon immediately due and payable. Unless the balloon could be settled in cash within thirty days, the portfolio will be listed for sale under the Investor's license or by another licensee designated by Investor. If equity is available, properties will be sold until investment plus profit are paid off. If equity is exhausted by the Investor's investment plus profit, Attorney may receive no distribution.

40. Debtor will be primarily responsible to repay the investment plus profit. Attorney will personally guarantee repayment of these funds to Investor.

41. Investor is entitled to ten percent of attorney's fees ultimately collected by Attorney.

42. The estate will maintain life insurance on the life of the debtor with a $400,000 benefit. The policy will provide for ten-year level non-smoking premiums. The first beneficiary of the policy will be the unsecured creditors of the estate. After the unsecured creditors are paid, the remaining funds will go directly to the Investor and, thereafter, directly to the Attorney. Debtor will designate remainder beneficiary.

VIII.    CLARIFICATION OF EXHIBIT 14—MS

43. Exhibit 14-MS (Management Standards) was drafted for the Attorney Control scenario.

Under the Split Control scenario, management standards will apply differently depending

on whether they relate to the entire case or one or more properties.

    a.    Management standards that apply to the entire case continue in full force under

        Split Control scenario.

    b.    Management standards that apply to particular properties continue in full force

        only with regard to properties under Debtor control.

44. Debtor will have full property management responsibilities from confirmation.  If Debtor

fails to carry out his management or certain other plan obligations listed in Exhibit 14—

MS (Management Standards), Attorney after a motion and court order may take over

the management responsibilities or hire a professional property manager.  These

standards are practical and common sense requirements mandated by the Investor.

One the standards requires that Debtor contribute his entire disposable income to the

estate from his primary occupation as a professional musician.  Paragraph 5 in Exhibit 14

—MS provides that if Debtor fails to provide his full disposable income for three months

(consecutive or not) on the first of the month debtor will be freed from property

management responsibilities so he can focus on his music profession.  This provision at

Line 1 of Paragraph 5 requires two clarifications.

45. First, Debtor's disposable income is calculated and established in Exhibit 1—DCPI

(Declaration of Current/Postpetition Income).  The value of Debtor's disposable income

SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014

1    ~~calculated in Exhibit 1 is $1,436. Exhibit 14 - MS (Management Standards) which defines~~

2    ~~Debtor's obligation to contribute entire disposable income and consequences if he fails~~

3    ~~to do so, shows a different number - $1,326 per month. This discrepancy requires an~~

4    ~~explanation.~~

5

6    ~~46. The amount $1,436 is the sum of Debtor's real estate income with six properties~~

7    ~~$110/mo and Debtor's music income $2,826/mo less Debtor's expenses of $1,500/mo.~~

8    ~~The income shown in Exhibit 14 - MS $1,326/mo is a figure that excludes real estate~~

9    ~~income. Debtor is only responsible to keep his music income at or above $2,826/mo or~~

10

11   ~~to keep his expenses at or below $1,500/mo. so he can contribute from his music~~

12   ~~income (after his personal expenses) $1,326/mo.~~

13   ~~47. Second, Debtor is required to contribute his entire disposable income even if it exceeds~~

14

15   ~~$1,326.~~

16

17   **IX.    RESOLVING MANAGEMENT TITLE OBSTACLES TO PROPERTY SALES**

18

19   48. Debtor co-owns two properties with another individual, Maurice Stephenson ("Co-

20   owner"). The relationship between co-owners has been difficult. The two gentlemen

21   have had difficulty achieving cooperation. This difficulty is a management problem.

22

23   Debtor will resolve this problem via a sale or by partition action of the two Angeles Vista

24   Boulevard properties ("AV properties") in state court.

25

26   49. Currently, the sum of the loans encumbering each property exceeds its fair market

27   value. One or more parties holding the mortgages thus will need to settle with Debtor's

28   co-owner Mr. Stephenson. Mr. Stephenson has expressed a desire in the past to

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

consummate a short sale and is reasonably expected to cooperate. Without a partition,

a short sale or a foreclosure may be impossible or impractical.

50. In addition to Mr. Stephenson, another co-owner Esther Escalante holds five percent of

each AV property. In other words, fifty percent is held by Mr. Stephenson, forty five

percent is held by Debtor, and five percent is held by Ms. Escalante.

51. Ms. Escalante has given no consideration for her interest. The transfer was done on

advice of a rogue paralegal with the knowledge and consent of the attorney Guy Bayley,

who was advising Debtor at the time. Because Ms. Escalante paid no value for the

transfer, her interest is vulnerable to an action for quiet title. Muktarian v. Barmby, 63

Cal.2d 558 (1965). Mr. Williams will seek to set aside Ms. Escalante's
alleged interest in a Court of competent jurisdiction.

52. ~~For the partition and quiet title litigation, to the extent this work is done before the first~~

~~sale, the following terms will apply. Attorney will work with an experienced real estate~~

~~attorney. Experienced real estate attorney will need to be paid up front. The bulk of~~

~~the real estate legal work will be done by Attorney. Attorney will be paid for this work~~

~~from proceeds of the partition. The money to pay the experienced real estate attorney~~

~~will come from the estate. In practice, it will be provided by the Investor. Most likely~~

~~the partition will result in a sale of the properties to third parties. As a corollary, if the~~

~~sale of Co-owner's interest does not pay off all liens, mortgagees will have state court~~

~~remedies against the Co-owner.~~

53. ~~The proceeds will be divided as follows.~~

54. ~~The purpose of this paragraph is to clarify that there are two types of attorney's fees for~~

~~purposes of the partition statute.~~

SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014

a.  ~~California Code of Civil Procedure § 874.010(a) allows for the recovery of those~~

~~attorney fees incurred by a party for the common benefit. Stutz v. Davis, 122~~

~~Cal. App. 3d 1, 5 (1981). These will be called Common Benefit Attorney's Fees.~~

b.  ~~On the other hand, attorney's fees that benefit attorney's client (here the estate)~~

~~vis-a-vis other co-owners are not recoverable directly from the proceeds and are~~

~~the responsibility of the client. These will be called Client-Only Attorney's Fees.~~

c.  ~~Common Benefit Attorney's Fees will be paid to the attorney directly from the~~

~~proceeds, in the same way that a realtor gets paid from the sale proceeds before~~

~~anyone else. Client-Only Attorney's Fees will be paid as described below.~~

55. The 50% share of Maurice Stephenson's proceeds from each property will be paid to the

holder of the first lien on the respective property. Any remainder of the share of Mr.

Stephenson will be paid to the holder of the second lien. The 50% share of the Debtor

will be used first to pay the holder of the applicable plan mortgage. The remainder, if

any, will be paid to the General Unsecured Creditors. ~~The remainder, if any, will be paid~~

~~to reimburse the Investor for any funds already advanced. After being reimbursed from~~

~~partition proceeds, the Investor will have a continuing obligation to advance funds, up~~

~~to $60,000.~~ Any funds remaining from partition proceeds will go to pay Attorney's ~~real~~

~~estate fees and bankruptcy~~ fees.

56. *Some or all properties that will have equity beyond transaction costs may be sold* ~~*at*~~

~~*Attorney's discretion to pay PUC, the Investor,*~~ *and the Attorney's fees in that order.*

~~*Under the Attorney-Control scenario, Attorney may sell any property in any order. Under*~~

~~*the Split-Control scenario, Attorney may only sell GAV properties. Eighth Avenue*~~

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

~~property may be sold but only after GAV properties have been sold and proceeds were~~

~~not sufficient.~~

57. ~~Debtor has the option to pay off all debts including pre-petition debts, debt to Investor~~
~~and the debt to Attorney by finding another investor to pay off all of these debts or by~~
~~finding new financing—secured or otherwise—to pay off all of these debts.~~

## X.    GENERAL TERMS

58. As of the Effective Date, the obligations shall be deemed current.  All pre-petition

defaults are cured by confirmation of the plan and all foreclosure actions including any

notice of default or sale are void.  All other terms of the existing loan documents not

inconsistent with this plan shall remain in full force and effect and apply to the secured

portion of the claim.  In the event Debtor fails to comply with these terms, secured

creditors shall have all remedies as called for in the original contract.  The allowed

unsecured portion of the claim shall be paid as part of the general unsecured claims as

described in Class 6 above.

59. The Plan provides that the Effective Date is 14 days after the confirmation order is

entered. Page 8, Article VII, Par B.  Disclosure Statement provides that the period is 30

days. Page 10.  The correct period is 14 days.

60. In Exhibit 2 – ISCC, page 27 of 57, the holder of the claim classified as 5(d)(2) is listed as

Bank of America. The correct holder for all purposes is CitiBank N.A. as Trustee for

CMLTI Asset Trust its successors and/or assigns by its duly authorized agent PennyMac

Loan Services, LLC.

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

## XI.   EXISTING STIPULATIONS

61.     Existing stipulations with creditors are the following:

   a.  Stipulation re 1675 West Blvd, Los Angeles, CA 90019 has been filed as docket

      no. 127.

   b.  Stipulation re 13755 Driftwood Drive, Victorville, CA 92395 (First Lien) has been

      filed as docket no. 98.

   c.  Stipulation re 13755 Driftwood Drive, Victorville, CA 92395 (Second Lien) has

      been filed as docket no. 94.  Order approving was entered as docket no. 96.

## XII.   NEW PARAGRAPHS IN SECOND REVISED ADDENDUM

62.     Notwithstanding any other provision of the Plan, in accordance with stipulation

filed on 6/18/2013 (Doc 98), there will be no transfer and assumption permitted for

property located at 13755 Driftwood Drive, Victorville, California 92395, except with
the consent of allowed claim- and interest-holders or a Court order.

63.     Notwithstanding any other provision of the Plan, there will be no transfer and

assumption permitted for the property located at 5271 Angeles Vista Boulevard, Los

Angeles, CA 90043 ("5271 AV"). except with the consent of allowed claim- and
interest-holders or a Court order.

64.     ~~Since in the First Revised Addendum 5271 AV was under exclusive attorney~~

~~control postconfirmation, status quo is preserved herein by giving Attorney direct~~

~~control over the property by one of several legal devises, whichever may be appropriate~~

~~under the circumstances.  Attorney will maintain insurance coverage in amounts equal~~

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

1   ~~to or in excess of the United States Trustee requirements to protect Debtor from~~

2   ~~liability.~~

3   ~~65.     For administrative convenience of Genesee and 5303 AV, during the period~~

4   ~~before title can be transferred, Attorney will receive direct control over the properties~~

5   

6   ~~by one of several legal devises, whichever may be appropriate under the circumstances.~~

7   ~~Attorney will cooperate with Debtor in signing any documents related to Driftwood,~~

8   ~~West, or Eighth Avenue properties.~~

9   

10  ~~66.     Attorney control means full exclusive control, including without limitation, ability~~

11  ~~to sign documents with legal effect, receipt of notice, property management, litigation~~

12  ~~and settlement, accounting, bank account management, and property sale needs.~~

13  ~~Under Split Control Scenario, Debtor retains full exclusive control of three properties—~~

14  

15  ~~Driftwood, West, and Eighth Avenue— including without limitation ability to sign~~

16  ~~documents with legal effect, receipt of notice, property management, litigation and~~

17  ~~settlement, accounting, bank account management, and property sale needs.~~

18  

19  ~~67.     Transfer of control may be achieved by means of Attorney with a power of~~

20  ~~attorney with respect to 5271 AV for all purposes, making the Attorney attorney-in-fact~~

21  ~~for all purposes, some other appropriate legal device, or a combination of the foregoing~~

22  ~~devices.  Debtor will execute the necessary documents to effect the transfer of control~~

23  

24  ~~as soon as practical after the confirmation hearing wherein the plan is confirmed.~~

25  ~~68.     For administrative convenience, with respect to GAV properties, until legal~~

26  ~~control may be transferred to Attorney, Debtor will cooperate and sign documents with~~

27  

28  ~~legal effect for any purpose including, without limitation, receipt of notice, property~~

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

1  management, litigation and settlement, accounting, bank account management, and

2  property sale needs.

3  69.    For administrative convenience, postconfirmation, money that should have been

4  deposited, applied or transferred into GAV accounts, whether or not it was or was not

5

6  deposited, applied or transferred into another account will be transferred to those

7  accounts forthwith.  This transfer provision will apply to funds whenever actually

8  deposited, transferred or applied to estate accounts and is subject to offset or

9

10  deduction for reasonable expenses supported by itemized documentation benefiting

11  during the case GAV properties.  Therefore, Debtor will receive credit postconfirmation

12  for any aforementioned expenses incurred.

13  70.    For clarification, under Split Control Scenario, full Attorney control of the case

14

15  and estate property except for three properties—Driftwood, West, and Eighth Avenue—

16  means that the Attorney has the responsibility for direct management of all aspects of

17  the case, except for any management aspects directly related to said properties.

18

19  Debtor's personal bank account and bank accounts for Driftwood, West, and Eighth

20  Avenue will remain under exclusive control of the Debtor.  Debtor will cooperate with

21  Attorney in his case management duties including without limitation providing

22  information, documents, and, if necessary, access.  Both Debtor and Attorney will have a

23

24  set of manager's keys to each property to be used for access only in the event of an

25  emergency.

26

27

28

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

71.    In the Treatment Summary Exhibit to the Second Revised Addendum (attached, now entitled EXH 12-TS-R2), the following lines have had minor changes due to negotiation with secured creditors:

| | CHANGES IN EXHIBIT 12-TS-R2 | | | |
|---|---|---|---|---|
| Item | Line in Exhibit to 2nd Revised Exhibit | Creditor | Property | Comment/Change |
| 1 | 7 | FNMA | Genesee | 1st Pmt date |
| 2 | 9 | Bank of America | Eighth Avenue | Minor change to arrears, FMV, sec'd claim amount, 1st pmt date |
| 3 | 11 | Green Tree | 5271 | Arrears no longer cap'd, minor change to 1st pmt date |
| 4 | 12 | Citibank | 5303 | Creditor name |
| 5 | 27 | Green Tree | 5271 | New line added. Arrears no longer cap'd. |
| 6 | 33,34,35 | Unsecured | | Minor changes |

72.    Changes to certain secured claim treatment also resulted in minor impact on unsecured class treatment. This is reflected, in addition to Exhibit 12-TS-2R as described above, in Exhibit 3 (attached).

73.    The updated stipulation list is below. It also shows the status of negotiation.

| | STIPULATIONS AS OF DECEMBER 16, 2014 | | |
|---|---|---|---|
| Item | Creditor | Property | Current Stipulation Status |
| 1 | FNMA | Genesee | Stipulation was drafted by creditor, signed by Debtor's counsel and returned to creditor. The only steps remaining are for creditor's counsel to sign the stipulation he/she drafted and file it. |
| 2 | US Bank | West | Stipulation filed as Doc 127 |
| 3 | Bank of America | 8th Avenue | Economic terms of the treatment have been agreed to and confirmed in writing on December 1, 2014 |
| 4 | Citibank | Driftwood | Stipulation filed as Doc 98. |
| 5 | Green Tree | 5271 | Stipulation has been signed by both |

SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014

| | | | | parties and returned to creditor for filing. |
|---|---|---|---|---|
| 6 | Citibank | 5303 | | Stipulation filed as Doc 209. |

Date: December 16th, 2014

X _Joseph M Willia_ S
Signature of Debtor

Joseph Williams
Printed name of Debtor

Date: December 16, 2014

/s/ ALIK SEGAL
Signature of attorney for Debtor, if any

Alik Segal 175159
Printed name of attorney for Debtor, if any

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: December 16th, 2014

X _Joseph M Willia_ S
Signature of Debtor

**SECOND REVISED PLAN ADDENDUM TO FIRST AMENDED PLAN OF
REORGANIZATION OF JOSEPH WILLIAMS DATED SEPTEMBER 12, 2014**

## Exhibit 2 - ISCC

### Series 5 Classes:  Impaired Secured Claim Classes

| Class 5(a)(1): | | |
|---|---|---|
| Secured claim of: | Los Angeles County Treasurer & Tax Collector | |
| Property address or description of collateral: | 3629 S. Genesee Ave, Los Angeles, CA 90016 | |
| Priority of lien: | | 1 |
| Total amount of allowed claim: | $ | 138 |
| Term of Loan (years): | | N/A |
| Interest rate (to compensate creditor because claim is paid over time): | | N/A |
| Amount of each installment: | $ | 138 |
| Total yearly payments: | | N/A |
| Total amount of payments (over time) to satisfy the secured claim: | | N/A |
| First payment date: | | Effective Date |
| Payments per Year | | N/A |
| Day of the month when the payment is due: | | Effective Date |

| Class 5(a)(2): | | |
|---|---|---|
| Secured claim of: | Federal National Mortgage Association | |
| Property address or description of collateral: | 3629 S. Genesee Ave, Los Angeles, CA 90016 | |
| Priority of lien: | | 2 |
| Total amount of allowed claim: | $ | 372,512 |
| Term of Loan (years): | | 40 |
| Interest rate (to compensate creditor because claim is paid over time): | | 5.25% |
| Amount of each installment: | $ | 1,858 |
| Total yearly payments: | $ | 22,300 |
| Total amount of payments (over time) to satisfy the secured claim: | $ | 892,009 |
| First payment date: | | 5/1/2014 |
| Payments per Year | | 12 |
| Day of the month when payment is due: | | 1st |

| Class 5(b)(1): | | | |
|---|---|---|---|
| Secured claim of: | US Bank NA | | |
| Property address or description of collateral: | 1675 West Blvd, Los Angeles, CA 90019 | | |
| Priority of lien: | 1st | | |
| Total amount of allowed claim: | | $ | 265,000 |
| Term of Loan (months): | | | 402 |
| Term of Loan (years): | | | 33.5 |
| Interest rate (to compensate creditor because claim is paid over time): | | | 4.00% |
| Amount of each installment: | | $ | 1,197.63 |
| Total yearly payments: | | $ | 14,372 |
| Total amount of payments (over time) to satisfy the secured claim: | | $ | 481,446 |
| First payment date: | 7/15/2013 | | |
| Payments per Year | 12 | | |
| Day of the month when the payment is due: | 15th | | |

| Class 5(c)(1): | | | |
|---|---|---|---|
| Secured claim of: | Bank of America, NA | | |
| Property address or description of collateral: | 5271 Angeles Vista Blvd., Los Angeles CA 90043 | | |
| Priority of lien: | 1 | | |
| Total amount of allowed claim: | | $ | 397,162 |
| Term of Loan (years): | | | 40 |
| Interest rate (to compensate creditor because claim is paid over time): | | | 5.00% |
| Amount of each installment: | | $ | 1,915.10 |
| Total yearly payments: | | $ | 22,981 |
| Total amount of payments (over time) to satisfy the secured claim: | | $ | 919,249 |
| First payment date: | 7/1/2013 | | |
| Payments per Year | 12 | | |
| Day of the month when the payment is due: | 1st | | |

| Class 5(d)(1): | | |
|---|---|---|
| Secured claim of: | Los Angeles County Treasurer & Tax Collector | |
| Property address or description of collateral: | 5303 Angeles Vista Blvd., Los Angeles CA 90043 | |
| Priority of lien: | 1 | |
| Total amount of allowed claim: | $ | 104.80 |
| Term of Loan (years): | N/A | |
| Interest rate (to compensate creditor because claim is paid over time): | N/A | |
| Amount of each installment: | $ | 104.80 |
| Total yearly payments: | N/A | |
| Total amount of payments (over time) to satisfy the secured claim: | N/A | |
| First payment date: | Effective Date | |
| Payments per Year | N/A | |
| Day of the month when the payment is due: | N/A | |

| Class 5(d)(2): | | |
|---|---|---|
| Secured claim of: | Bank of America, NA | |
| Property address or description of collateral: | 5303 Angeles Vista Blvd., Los Angeles CA 90043 | |
| Priority of lien: | 2 | |
| Total amount of allowed claim: | $ | 450,000 |
| Term of Loan (years): | | 40 |
| Interest rate (to compensate creditor because claim is paid over time): | | 5.25% |
| Amount of each installment: | $ | 2,244.92 |
| Total yearly payments: | $ | 26,939 |
| Total amount of payments (over time) to satisfy the secured claim: | $ | 1,077,560 |
| First payment date: | 1/1/2014 | |
| Payments per Year | 12 | |
| Day of the month when the payment is due: | 1st | |

| Class 5(e)(1): | | |
|---|---|---|
| Secured claim of: | Citibank, N.A. as Trustee for Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2006-8 | |
| Property address or description of collateral: | 13755 Driftwood Drive, Victorville, CA 92395 | |
| Priority of lien: | 1st | |
| Total amount of allowed claim: | $ | 172,000 |
| Term of Loan (years): | | 30 |
| Interest rate (to compensate creditor because claim is paid over time): | | 5.25% |
| Amount of each installment: | $ | 949.79 |
| Total yearly payments: | $ | 11,397 |
| Total amount of payments (over time) to satisfy the secured claim: | $ | 341,925 |
| First payment date: | 7/1/2013 | |
| Frequency of payments: | Monthly | |
| Day of the month when the payment is due: | 1st | |

| Class 5(f)(1): | | |
|---|---|---|
| Secured claim of: | **Bank of America, NA** | |
| Property address or description of collateral: | **5356 8th Ave, Los Angeles, CA 90043** | |
| Priority of lien: | **1** | |
| Total amount of allowed claim: | | $ 312,291 |
| Term of Loan (years): | | 40 |
| Interest rate (to compensate creditor because claim is paid over time): | | 5.00% |
| Amount of each installment: | | $ 1,506 |
| Total yearly payments: | | $ 18,070 |
| Total amount of payments (over time) to satisfy the secured claim: | | $ 722,811 |
| First payment date: | **4/1/2014** | |
| Payments per Year | **12** | |
| Day of the month when the payment is due: | **1st** | |

## Exhibit 3 - <u>GUC</u>

## General Unsecured Claims

| | B | C | D | E | F |
|---|---|---|---|---|---|
| 44 | | Unsecured Creditors | | | |
| 45 | Item No. | Unsecured Creditor | Unsecured Balances | | |
| 46 | | | 6 properties | 5 properties | 4 properties |
| 47 | 1 | FNMA - Federal National Mortgage Assn | $ 83,452 | $ 83,452 | $ 83,452 |
| 48 | 2 | US Bank, N.A. | $ 220,635 | $ 220,635 | $ 220,635 |
| 49 | 3 | Bank of America, N.A. | $ 197,709 | $ 197,709 | $ 197,709 |
| 50 | 4 | Citibank, N.A. | $ 114,901 | $ 114,901 | $ 114,901 |
| 51 | 5 | US Bank, N.A. | $ 79,654 | $ 79,654 | $ 79,654 |
| 52 | 6 | Charles Chase | $ 25,000 | $ 25,000 | $ 25,000 |
| 53 | 7 | Green Tree Servicing LLC | $ 174,747 | $ 174,747 | $ - |
| 54 | 8 | Bank of America, N.A. | $ 104,861 | $ 104,861 | $ - |
| 55 | 9 | Citibank, N.A. | $ 157,106 | $ - | $ - |
| 56 | 10 | Bank of America, N.A. | $ 199,370 | $ - | $ - |
| 57 | 11 | Bank of America, N.A. | $ 103,000 | $ - | $ - |
| 58 | | | 1,460,435 | 1,000,959 | 721,351 |

## Exhibit 4 - DC

Disputed Claims

The following claims have been listed as disputed. None of the holders of disputed claims have filed a proof of claim. Thus all the disputed claims are deemed disallowed.

### SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxxxxxxxxxxx9782<br>Creditor #: 2<br>Home Depot Credit Services<br>PO Box 689100<br>Des Moines, IA 50368-9100 | - | | Building materials | | | X | 4,000.00 |
| Account No. 2:12-ap-01854-BR<br>Creditor #: 3<br>Maurice Stephenson<br>c/o Alvin B. Sherron<br>1055 Wilshire Blvd., #1702<br>Los Angeles, CA 90017 | - | | 2007-2008<br>Adversary Proceeding 2:12-ap-01854-BR | | X | X | 0.00 |

### SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

| Account No. xxxxxxxxxxxx3076<br>Creditor #: 12<br>Home Depot Credit Services<br>PO Box 689100<br>Des Moines, IA 50368-9100 | X | - | 2008<br>Purchase Money Security<br>Items purchased from Home Depot with Home Depot credit card and subject to a Home Depot security interest:<br>- Dishwasher, Sink, Heating System at 5303 Angeles Vista Blvd., Los Angeles, CA 90043 and<br>Value $ 5,000.00 | | X | | 12,000.00 | 7,000.00 |
| Account No. 6614<br>Creditor #: 13<br>Integrated Healthcare Services<br>PO Box 6530<br>Anaheim, CA 92816 | | - | 03/10/2010 - 09/16/2010<br>Proceeds of two auto accident settlements in which Integrated Healthcare Services Physical Therapy Network ("IHS") claims a healthcare provider's lien. Debtor had an auto accident on Aug 2008 and recovered about $3,000 for for pain and suf<br>Value $ Unknown | | X | X | 4,800.00 | Unknown |

## EXHIBIT 12-TS-R2 (Treatment Summary)

### Schedule D Claim Treatment - Mortgages

| Class | Name | Property | Car'd Post-peth in arrears | FMV | Secured Claim | Term (y) | Term (mo) | Rate (ann) | P&I/mo | 1st Pmt date (Est) | Last Payment | Annual P&I | Lifetime P&I | Pmt/mo w/o 5303 | Pmt/mo w/o 5305,5271 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5(a)(2) | FNMA - Federal National Mortgage As | 3629 S Genesee Ave, Los Angeles, CA 90016 | 6,566 | 369,000 | 375,566 | 480 | | 5.25% | 1,874 | 4/1/2014 | 3/1/2054 | 22,483 | 899,322 | 1,874 | 1,874 |
| 5(b)(1) | US Bank, N.A. | 1675 West Blvd, Los Angeles, CA 90019 | | 265,000 | 265,000 | 402 | | 4.00% | 1,198 | 7/15/2013 | 12/15/2046 | 14,372 | 483,446 | 1,198 | 1,198 |
| 5(b)(1) | Bank of America, N.A. | 5356 8th Ave, Los Angeles, CA 90043 | 13,798 | 312,291 | 326,089 | 480 | | 5.00% | 1,572 | 5/1/2013 | 4/1/2053 | 18,869 | 754,747 | 1,572 | 1,572 |
| 5(b)(1) | Citibank, N.A. | 13755 Driftwood Drive, Victorville, CA 92395 | | 172,000 | 172,000 | 360 | | 3.25% | 950 | 9/1/2013 | 8/1/2043 | 11,397 | 341,923 | 950 | 950 |
| 5(a)(1) | Green Tree Servicing LLC | 5271 Angeles Vista Blvd, Los Angeles, CA 90043 | | 390,000 | 390,000 | 480 | | 5.00% | 1,881 | 9/1/2013 | 8/1/2053 | 22,567 | 902,672 | 1,881 | |
| 5(a)(2) | Citibank, N.A. | 5303 Angeles Vista Blvd, Los Angeles, CA 90043 | 10,000 | 440,000 | 450,000 | 480 | | 5.25% | 2,245 | 1/1/2014 | 12/1/2053 | 26,939 | 1,077,560 | | |
| TOTAL | | | 30,364 | 1,948,291 | 1,978,655 | | | | 9,719 | | | 116,627 | 4,457,671 | 7,474 | 5,593 |

### Schedule D Claim Treatment - Property Tax

| Class | Name | Property | Post-peth arrears | FMV | Secured Claim | Term (y) | Term (mo) | Rate (ann) | P&I/mo | 1st Pmt date (Est) | Last Payment | Annual P&I | Lifetime P&I |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5(b)(1) | Los Angeles County Tax Collector | 3629 S Genesee Ave, Los Angeles, CA 90016 | 181 | | | 1 | | 0.00% | 181 | 2/1/2015 | 2/1/2015 | 181 | 181 |
| 5(b)(1) | Los Angeles County Tax Collector | 5303 Angeles Vista Blvd, Los Angeles, CA 90043 | 105 | | | 1 | | 0.00% | 105 | 2/1/2015 | 2/1/2015 | 105 | 105 |
| TOTAL | | | 286 | | | | | | 286 | | | 286 | 286 |

### Schedule E Priority Claims Treatment

| Class | Name | Amount | Term (y) | Term (mo) | Rate (ann) | P&I/mo | 1st Pmt date (Est) | Last Payment | Annual P&I | Lifetime P&I |
|---|---|---|---|---|---|---|---|---|---|---|
| Priority Unsecured | Internal Revenue Service | 2,095 | 2.50 | 30 | 3% | 73 | 2/11/2015 | 7/11/2017 | 871 | 2,177 |

### Administrative (pre-confirm)

| Class | Name | Amount | Term (y) | Term (mo) | Rate (ann) | P&I/mo | 1st Pmt date (Est) | Last Payment | Annual P&I | Lifetime P&I |
|---|---|---|---|---|---|---|---|---|---|---|
| Unclass, Admin | Green Tree Servicing LLC | 5271 Angeles Vista Blvd, Los Angeles, CA 90043 — 7,162 | 5 | 60 | 0% | 119 | 2/1/2015 | 1/1/2020 | 1,432 | 7,162 |
| Unclass, Admin | Citibank, N.A. | 13755 Driftwood Drive, Victorville, CA 92395 — 1,240 | 3 | 36 | 0% | 34 | 7/1/2013 | 6/1/2016 | 413 | 1,240 |
| Debtor's Counsel | AllK Segal (approximate & subj to court order) | 250,000 | 5 | 60 | 5% | 4,718 | 2/1/2015 | 1/1/2020 | 56,614 | 283,069 |

### General Unsecured Treatment

| Class | Number of Properties | Effective Date Family contribution | Total Unsec'd Claims | Dividend Rate (%) | Dividend Amount ($) | Term (y) | Term (mo) | Rate | P&I/mo | 1st Pmt date (Est) | Last Payment | Annual P&I | Lifetime P&I |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gen Unsec'd | 6 | | 1,460,721 | 5% | 73,036 | 5 | 60 | 0.00% | 1,217 | 2/1/2015 | 1/1/2020 | 14,607 | 73,036 |
| Gen Unsec'd | 5 | | 1,001,140 | 5% | 50,057 | 5 | 60 | 0.00% | 834 | 2/1/2015 | 1/1/2020 | 10,011 | 50,057 |
| Gen Unsec'd | 4 | | 721,532 | 5% | 36,077 | 5 | 60 | 0.00% | 601 | 2/1/2015 | 1/1/2020 | 7,215 | 36,077 |

| | 6 Props | 5 Props | 4 Props |
|---|---|---|---|
| Net Real Estate Income (after MTG etc.) | 63 | 158 | 374 |
| Net Music Income | 2,826 | 2,826 | 2,826 |
| TOTAL NET TAKE-HOME INCOME | 2,889 | 2,984 | 3,200 |
| Personal Expenses | (1,500) | (1,500) | (1,500) |
| DISPOSABLE INCOME | 1,389 | 1,484 | 1,700 |
| Schedule E Priority Claims Treatment | (73) | (73) | (73) |
| Unclass. Admin | (34) | (34) | (34) |
| General Unsecured Treatment | (1,217) | (834) | (601) |
| TOTAL DEBT SERVICE w/o ATTY FEES | (1,324) | (941) | (708) |
| Admin (post confirm - UST, CPA, Life Insurance) | (600) | (600) | (600) |
| TOTAL EXPENSES | (1,924) | (1,541) | (1,308) |
| Surplus (Deficit) w/o Atty Fees | (535) | (57) | 392 |
| Debtor's Counsel | (4,718) | (4,718) | (4,718) |
| Surplus (Deficit) w/ Atty Fees | (5,253) | (4,775) | (4,326) |